## PELL *v.* ULMAR.

Upon default for twenty-three days in payment of money due upon a mortgage to the commissioners for loaning the United States Deposit Fund, all title and interest of the mortgagor in the land is gone.

The qualified right to redeem thereafter is a special one, available only by strict compliance with the terms of the statute, and is not an equity of redemption with common law incidents.

Where, after default, the commissioners do not proceed to sell as required by law, and the period has expired during which possession is reserved to the mortgagor by statute, he has no right to possession, but only a right to redeem.

After a default there was an irregular and void sale by one commissioner to the state, whose patentee took possession of the land, which was vacant, after the mortgagor's statutory license to continue in possession had expired. *Held*, that the mortgagor's grantee could not maintain an action to recover possession.

The case of *Olmstead* v. *Elder* (1 *Seld.*, 144), overruled.

APPEAL from the Supreme Court. Action to recover possession of a lot of land in Williamsburgh, commenced in February, 1854, and tried before the late Mr. Justice ROCK-WELL, without a jury. One Richard A. Cooke was seized in fee of the lot on the 24th July, 1837, and on that day mortgaged it, with other lots, to " The commissioners fo loaning certain moneys of the United States, of the county of Kings." On the 7th May, 1838, Cooke conveyed the lots to the plaintiff, subject to the mortgage, the latter agreeing to pay the mortgage debt and interest. The interest on the mortgage, payable on the first Tuesday of October, 1842, was not then paid, nor was it paid within twenty-three days thereafter, or at any time since, and for this default the commissioners duly declared the mortgage foreclosed. On the thirty-first day of the same month, Bernardus J. Ryder and Theodore Eames, the commissioners then in office, met, and directed notice of the sale of the lots to be published and posted, pursuant to the statutes, for the first Tuesday of February, 1843, which notices were accordingly given Before the day of sale the term of office of Mr. Ryder had expired, and he thereafter refused to act as a commissioner, except in a single instance, as afterwards mentioned. One J. A. Emmans was appointed to succeed Ryder, but he never took the oath of office or filed his bond, or attempted to act as a commissioner, and no other appointment was made. On the day appointed Eames offered the premises for sale, but there were no bidders and there was consequently no sale. In March, 1843, Ryder and Eames went together to the mortgaged premises, and Eames, with Ryder's assent, made a formal entry thereon, but they were then, as they were also at the time of the execution of the mortgage, unoccupied and an open common; and they continued in that condition until 1848, and after letters patent were issued, as afterwards mentioned. Eames alone published another notice of a sale for the third Tuesday of September, 1843, and on that day again offered the lots for sale, and, no one bid-

ding the amount of the debt, or the sum at which they had been appraised, he purchased them in the name of the people of the state. Subsequently, in January, 1848, letters patent, under the great seal of the state, were issued to Josiah Blackwell; and the defendant derives title under Blackwell, and was in possession when the action was commenced.

In 1846 an act was passed (*ch.* 204) confirming the official acts of Theodore Eames as one of the commissioners of loans in Kings county, and declaring that the same, and all deeds and papers executed by him, should have the same force, effect and validity as though two commissioners had joined therein.

The defendant's counsel, among other propositions, insisted that, by the default of the mortgagor in paying the interest due in October, 1843, an absolute estate in the premises vested in the commissioners, and that all right of the mortgagor, and those claiming under him, to the possession thereof, ceased after the first Tuesday of February following. He also relied on the act of 1846. The judge refused to hold as requested, but, on the contrary, decided that the plaintiff was entitled to recover possession of the premises, and gave judgment accordingly; and the defendant's counsel excepted.

After an affirmance at the the general term, the defendant brought this appeal.

*Nicholas Hill,* for the appellant.

*John Townshend,* for the respondent.

Denio, J. If this had been an ordinary mortgage between individuals, the plaintiff would not be entitled to recover. The mortgagor, under whom he claimed, had made default and the estate was forfeited at law. The interest which remained in the plaintiff, as the grantee of the mortgagor, was an equity of redemption. But the owner of an equity

of redemption in mortgaged premises after forfeiture never could maintain ejectment against the mortgagee in possession, or any one holding under him. He has only the right to redeem in equity. Formerly the mortgagee could maintain ejectment, but this is prohibited by the Revised Statutes. (2 *R. S.*, 312, § 57.) If, however, the mortgagee obtains possession without force, he is entitled, as well since as before the statute, to hold it against the mortgagor. (*Van Duyne* v. *Thayre*, 14 *Wend.*, 233 ; *Phyfe* v. *Riley*, 15 *id.*, 248; *Watson* v. *Spence*, 20 *id.*, 260; *Fox* v. *Lipe*, 24 *id.*, 164; 2 *Sandf. S. C. Rep.*, 325.) But the mortgages to the commissioners of loans are regulated by very precise statutory provisions, and it is to be determined whether, according to these enactments, the mortgagor who has made default in his payments is in a better position than he would be in the case of a common law mortgage. In all the mortgages taken under this statute the interest is to be made payable on the first Tuesday of October in each year (*Laws of* 1837, *ch.* 150, §§ 12, 56), and such were the terms of this mortgage. The commissioners are to meet annually at their office on that day, and also on Tuesday and Wednesday in each of the succeeding three weeks, to receive the moneys which may be paid on the mortgages. (§ 24.) The last of these days will consequently be the twenty-third after that on which the interest is payable; and it is then provided that if any of the borrowers shall fail to pay his interest when due, or within twenty-three days thereafter, on one of the days above mentioned, the commissioners shall become "seized of an absolute and indefeasible estate in fee" in the mortgaged premises, and the mortgagor, his heirs or assigns, "shall be utterly foreclosed and barred of all equity of redemption," "any law, usage, custom or practice in courts of equity to the contrary notwithstanding." The following sentence is added to this section, and upon it the decision in this case in some measure turns: "But the mortgagor his or her heirs or assigns, shall be entitled to retain pos-

session of the mortgaged premises until the first Tuesday of February thereafter, and *to redeem the same as hereinafter provided.*" (§ 30.) The possession for the period between the default and the first Tuesday of February following is not in question, for neither the commissioners nor any one under the State attempted to acquire the possession until after the last mentioned day; but it is the right to redeem, by which the effect of the foreclosure is qualified, which is supposed to entitle the plaintiff to recover the possession. To show the extent of this right of redemption, it is necessary to look at some of the subsequent provisions of the statute. Within eight days after the last day of attendance of the commissioners, they are to advertise the lands, as to which the mortgagor is delinquent in the payment of interest, to be sold, and the day of sale is to be the first Tuesday of February then next. (§ 31.) On that day the premises are to be offered for sale, and, if sold, the commissioners are to convey the same to the highest bidder. (§ 32.) But if no one will bid the amount of the debt, with the interest and costs, the commissioners are to take possession and lease the premises until the first Tuesday of September then next, when they are to be again offered for sale upon an advertisement of six weeks. But before this second attempt to sell, the commissioners are authorized to procure an appraisement of the premises; and then if no one will bid, at this second attempt to sell, the amount of the incumbrance and expenses, the commissioners are themselves to bid, in the name and behalf of the people of the state, the amount at which they have been appraised, unless some other person will bid that amount or more; "but if the mortgagor, &c., shall, at or before the sale, &c., pay to the said commissioners" the debt, with interest to the first Tuesday of October following, and the expenses, "then the title in fee to the said mortgaged premises shall revert to and reinvest in the said mortgagor," &c., and the commissioners are, in that case, to

permit the owner to take possession and to hold the premises until another default. (§§ 33 to 37.)   If, upon any sale, any surplus is raised beyond the amount of the debt, the commissioners are to pay it to the mortgagor, his heirs or assigns. (§ 39.)   In this case, the commissioners, or the one who acted, attempted to follow the statute; but the failure of Mr. Ryder to act, as it was his right and duty to do, until his successor had qualified, although his term of office had expired, rendered all that was done, after the first notice of sale, nugatory. (1 *R. S.*, 117, § 9; *Powell* v. *Tuttle*, 3 *Comst.*, 396; *Olmstead* v. *Elder,* 1 *Seld.*, 144.)   The case, then, is this; the mortgagor has made default, but the commissioners have not proceeded to sell in the manner required by law. Neither the mortgagor, nor any one has offered to pay interest or principal upon the mortgage debt.   The state officers, supposing that the premises had been legally purchased in on behalf of the state, have assumed to grant them, and the defendants is in possession under that grant.   The plaintiff, a grantee of the mortgagor, does not ask to redeem, or offer to pay anything; but he brings this action of ejectment against the defendant, who holds under the letters patent from the state, affirming that, notwithstanding the default, and the expiration of the time during which the statute, in terms, allows the borrower to retain the possession after a default, he is still lawfully entitled to the possession of the mortgaged premises.   The patentee, under whom the defendant claims, it should be added, obtained the possession peaceably by entry upon the premises when vacant, and he transmitted that possession to the defendant.

I am of opinion that the statute does not warrant this pretension of the plaintiff.   It declares in very explicit language that a default in the payment of interest, for twenty-three days after it falls due, shall be, *ipso facto*, a foreclosure and extinguishment of the equity of redemption, and that thereupon an unredeemable estate shall vest in the commissioners; and when it proceeds to give a certain right

to the mortgagor to have his land again upon making certain payments. This is not reinstating the equity of redemption in its original vigor and with its common law incidents, but a special and limited privilege, which can only be availed of by a substantial compliance with the condition upon which it is given. In *Sherwaod* v. *Reade* (7 *Hill*, 431), it was held that the right to redeem existed after a default and a sale which was illegally made; but it was the special right of redemption which the act itself confers which was asserted and established in this case. The foreclosure which the statute pronounces is equivalent to the decree of a court to the same effect (*Jackson* v. *Voorhis*, 9 *John.*, 129; *Sherill* v. *Crosby*, 14 *id.*, 360; 3 *John. Ch.*, 332); and the right to redeem, which is subsequently mentioned, is in its nature like the relief which the courts would extend to a mortgagor, on a motion made after the decree and before the sale, upon the terms of paying the debt, interest and costs. If the mortgagor would have any advantage from such an order, he must comply with the terms; and, in this case, if he would take advantage of the provision of the statute in his favor, he must perform the condition upon which it depends; and the plaintiff stands in the shoes of the mortgagor. The contrary view proceeds upon the assumption that the right to redeem, referred to in the latter part of the 31st section, and particularly defined in the 33d, repeals and annuls that part of the first mentioned section which declares the effect of a failure to pay the interest, and that it reinstates the equity of redemption. This is contrary to the plainest rules of construing written language. If several provisions of the same instrument are apparently hostile to each other, but yet admit of an interpretation which would make them harmonize, such reconciling construction is to be adopted. But there is no real conflict in the several portions of this statute. An equity of redemption is a well defined interest in land, having many of the attributes of general ownership. In ordi-

nary mortgages, that interest is not extinguished by a default in the payment of the mortgaged debt. It can only be cut off by a foreclosure in a court of equity. But in mortgages subject to the provisions of this statute, the equity of redemption is by an express provision annihilated if the interest is not paid when due or within twenty-three days afterwards. On the occurrence of such a default, all title and interest of the mortgagor in the land is gone. The whole title to it vests in the commissioners. But as the state wants no more than its debt and interest, the mortgagor is relieved from the forfeiture he has incurred, if he will, before the actual sale, come forward and pay it with the expenses; and so, if the land sells for more than the debt and expenses, the commissioners are to pay the balance to the mortgagor. If we hold this not to be an interest in the land, but a special right to redeem, unaccompanied with the incidents of an equitable estate, the several provisions are in perfect harmony; and such, in my opinion, is the true construction. This view is confirmed by the provision allowing the mortgagor to retain the possession for a limited time after the default, which strongly implies that the general right to the possession is in the commissioners, and that, after the time mentioned has elapsed, the mortgagor's right to the possession is at an end. Instead, therefore, of the mortgagor's condition under this statute being more favorable than in the case of an ordinary mortgage, it appears to me to be less so. The legislature designed to guard the state against delay and expense, by giving the commissioners a speedier and more stringent remedy than ordinary mortgagors have, but at the same time to grant a reasonable indulgence to a borrower who would show himself willing to pay the debt and indemnify the public against the expenses of the proceedings. But the judgment of the Supreme Court, as has been shown, gives to the plaintiff rights which the debtor in unforeclosed mortgages between individuals never had. Thus, besides raising the special right to redeem

after foreclosure, extended by the statute to the mortgagor, to the dignity of an equity of redemption, which the statute declares shall not exist in such a case, it attributes to the equity thus created the qualities of a legal estate, as against a party holding under the mortgagee. I conclude, therefore, that an erroneous construction has been put upon the statute, and that a rule of the common law, moreover, as to the nature of an equity of redemption, has been overlooked. The failure of the commissioners to make a legal sale of the premises has left to the plaintiff the right to redeem, but not the right to have the premises without redemption.

The case of *Olmsted* v. *Elder*, which has been pressed upon our attention by the plaintiff's counsel, has been carefully examined, but we think it ought not to overrule our strong convictions of the correctness of the principles above laid down. There must be a new trial, with costs to abide the result.

STRONG, J. dissented; SELDEN, J. did not sit in the case.

Judgment reversed and new trial ordered.