## COURT OF APPEALS.

WM. D. WHITE, appellant agt. EBENEZER A. LESTER, and others, respondents.

The provisions of the law of 1837, in reference to loaning certain moneys of the United States, &c., in reference to entering the *order* for the advertisement of sale, - also entering a *copy of the advertisement*, and entering the *places* where, or the *persons* by whom the advertisements were put up, in the *minute-book of the commissioners*, are directory rather than compulsory, as against a *bona fide* purchaser, ignorant of such irregularity; notwithstanding the 33d section of such statute says : " All purchases made contrary to the provision of *this section*, shall be void." Such irregularities are not a violation of the 33d section.

There is no such disability in the *cashier of a bank* purchasing real estate at a public sale in his own name, but in fact for the benefit of the bank, as there is in the case of *trustees* with regard to the lands of their beneficiaries. Such a transaction in the former case would not avoid the sale, while in the latter it would.

Where both of the commissioners, under the statute of 1837, are present at and make the sale of the mortgaged premises, and the entry thereof in their book of minutes is made by only *one* of them, it is not a fatal irregularity. Besides, there is nothing in the law which requires this entry to be *signed* by the commissioners.

Where the plaintiff succeeds to the title of the mortgagor of the premises, and suffers the mortgate to become foreclosed by operation of law, by his delinquency in paying the amount due by the terms of the mortgage, it is equivalent to a foreclosure pronounced by a decree of a court, and nothing remains in the plaintiff but the special privilege of redemption. He has no right which can be prosecuted by action of ejectment against the purchaser in possession under the sale.

*March*, 1864.

ACTION of ejectment to recover the possession of certain lands in the village of Fredonia, in the county of Chautauque. The trial was had in that county before Justice DAVIS, without a jury, and resulted in a judgment for the defendants, which judgment was affirmed at a general term of the supreme court. From the latter judgment the plaintiff appealed to this court. The facts are sufficiently stated in the opinion of the court.

WILLIAM D. WHITE, *appellant, in person.*
CHAUNCEY TUCKER, *for the respondents.*

HOGEBOOM, J. The plaintiff sues in ejectment to recover

from the defendants the possession of certain premises in Chautauque county. He claims title through John Z. Saxton, who was the admitted owner in 1837, and he showed a regular deduction of title from and through him, sufficient to maintain the action, unless it is defeated by facts to be hereafter noticed.

The defendants also claim through Saxton, who in August, 1837, executed to the commissioners for loaning certain moneys of the United States, a mortgage upon said premises, pursuant to the laws of 1837 (*chap.* 150), on which default was made in paying the interest due in October, 1842. On the 6th of December, 1842, an entry was made of this circumstance, and of the fact that the premises were advertised for sale for the first Tuesday of February, then next, in the commissioners' book of minutes, and in their annual report to the comptroller. The premises appear to have been duly advertised for sale by publication and posting, in the manner required by law, except that there was no *order* for the advertisement entered in the minute-book, nor copy of the advertisement entered therein, nor entry of the places where, or of the persons by whom the advertisements were put up; all of which was enjoined by the statute before referred to. The substance of the statute appears to have been observed in regard to the actual advertisement, and I am inclined to think the provisions as to the entries in the minute-book above referred to, were, notwithstanding the declaration of the statute (§ 33), that "all purchases made contrary to the provisions of this (33d) section shall be void," directory rather than compulsory, as against a *bona fide* purchaser, ignorant of the irregularity. These irregularities were not violations of the provisions of the 33d section. (*King* agt. *Stow,* 6 *Johns. Ch.* 323.)

On the 7th of February, 1843, up to which time the plaintiff appears to have been in possession, the premises were duly sold by both commissioners, and struck off to one Newland, who then, or within a few days thereafter, received a

deed in due form from the commissioners, went into possession, and executed to the commissioners a new mortgage upon the premises.    The defendants deduce a regular title through him.    He paid his bill in cash to the commissioners, and the bid and subsequent transfer of title to the defendants was in his name, though he purchased in fact, as the case states, for the benefit of the Chautauque County Bank, but without any direction from the directors ; by which I understand is meant. that that institution was the purchaser, and intended to have the benefit (if any) of the purchase.    I scarcely think this was a violation of the charter of the bank (*Laws of* 1831, *chap.* 219), as the purchase was purposely made in the name of Newland, and the title designed to be kept in him, although if the premises were subsequently sold at a profit, he meant that the bank, of which he was the cashier, should have the benefit of it.    There was no disability in Newland to purchase, as there is in the case of trustees with regard to the lands of their beneficiaries, and, therefore, the purchase would not, I think, be void, but would inure to the benefit of Newland, if it could not be for the benefit of the bank. Such a transaction would not avoid the sale as against the plaintiff.

Although both commissioners were present at, and made the sale, the entry of it in the book of minutes was made by only *one* of the commissioners, and signed only by him, though purporting to be the act of both.    This is claimed to be a fatal irregularity, under the case of *Olmstead* agt. *Elder* (1 *Seld.* 144).    But no such point was presented in the latter case, and since the case of *Pell* agt. *Ulmar* (18 *N. Y.* 139), it must be regarded as overruled.    Moreover, there is nothing in the law which requires this entry to be *signed* by the commissioners ; and purporting, as it does, to be the *act of both*, we cannot presume against the truth of such a statement, simply because it is certified to be true by the signature of one commissioner.

There would appear, therefore, to be great doubt whether,

if the case for the plaintiff rested upon the irregularity of the proceedings to foreclose the loan office mortgage, they were sufficiently defective to make them invalid. But I think an effectual answer to the plaintiff's claim consists in a fact now to be noticed. The plaintiff, who succeeded to the title of the mortgagor, suffered the mortgage to become foreclosed by operation of law, by his delinquency in paying the amount due by the terms of the mortgage. This was held in *Pell* agt. *Ulmar* (18 *N. Y.* 145), to be equivalent to a foreclosure pronounced by the decree of a court, and nothing remained in the plaintiff but special privilege of redemption. The plaintiff went out of possession, and the defendants (or Newland) took immediate possession, under a deed dated as of the day of the sale, and executed a few days afterwards.

It does not appear, it is true, as suggested by the plaintiff, that the commissioners took *actual* possession. They had no right to do so until after the day of sale, and then they did so in effect by putting their grantee in possession, who, or his successors, has occupied ever since.

If we assume that the alleged irregularities in the sale were sufficient to vitiate it as such, nevertheless the default in the payment of the interest, as was held in the case of *Pell* agt. *Ulmar*, from which this case cannot be distinguished, destroyed and foreclosed the plaintiff's title—destroyed even his common law equity of redemption, and left him nothing but a special right of redemption, to be enforced only by strict compliance with the provisions of the act of 1837. He had, therefore, no right which could be prosecuted by action of ejectment against the commissioners or their assignees. Newland took possession under the authority and consent of the commissioners, and having paid the amount of the mortgage, must be regarded, equitably, at all events, as a mortgagee in possession. If in possession under such a title he could not be dislodged by an action of ejectment, for such an action is forbidden by the Revised Statutes. (2 *R. S. p.* 312, § 37.)

But the case of *Pell* agt. *Ulmar* holds, that his rights are

even less perfect than would be those of a mortgagor against a mortgagee in possession.

The plaintiff's counsel has attempted, but I think unsuccessfully, to distinguish this case from *Pell* agt. *Ulmar*. He is mistaken in supposing that Newland never took possession under his deed from Green and Douglas; and, I think also, in supposing that the deed was their *individual* deed. It *purported* to be on its face the deed of the commissioners, and such was the effect of the *acknowledgement*.

The judgment should be affirmed.

SELDEN, J., took no part in the decision.

All the other judges concurring.

Judgment affirmed.