William D. White, Appellant, *v.* Ebenezer A. Lester and others, Respondents.

The provisions of the act of April 4, 1837, authorizing a loan of certain moneys belonging to the United States, as to the entry in the minute-book of the commissioners of loans of the *order* for the advertisement of sale; of a copy of the advertisement; and of the places where, and the persons by whom, the advertisements were put up, are directory, rather than compulsory, as against a *bona fide* purchaser ignorant of any irregularity in the sale.

A purchase of land at a sale made by commissioners for loaning the United States deposit fund, by the cashier of a bank which by its charter has no capacity to purchase lands, is not a violation of the charter of the bank, although the cashier in fact makes the purchase for the benefit of the bank; but without any direction from the directors, and the title is designed to be kept in him.

There is no disability in the cashier of a bank to purchase, in such a case, as there is in the case of trustees, in respect to the lands of their beneficiaries. Hence, the purchase by him will not be void, but will inure to the benefit of the cashier if it cannot be for the benefit of the bank.

Where both commissioners of loans are present at, and make a sale of mortgaged premises, the fact that the entry of the sale in the book of minutes, though purporting to be the act of both, was made by only *one* of them, and was signed only by him, does not amount to a fatal irregularity.

There is nothing in the law which requires this entry to be *signed* by the commissioners; and when it purports to be the *act of both*, the court will not presume against the truth of such statement simply because it is certified to by the signature of one commissioner.

Where a mortgagor, or one succeeding to his title, makes default in the payment of interest, this destroys and forecloses his title — destroys even his common law equity of redemption — and leaves him nothing but a special right of redemption, to be enforced only by a strict compliance with the provisions of the act of 1837.

He has, therefore, no right which can be prosecuted by action of ejectment against the commissioners of loans, or their assignees.

One who takes possession of the mortgaged premises, after default of the mortgagor, under the authority and with the consent of the commissioners of loans, having paid the amount of the mortgage, must be regarded, equitably, at all events, as a mortgagee in possession. And if in under such a title he cannot be dislodged by an action of ejectment; such an action being forbidden by the Revised Statutes.

Action of ejectment to recover the possession of certain lands in the village of Fredonia, in the county of Chautauqua. The trial was had in that county before Justice Davis

without a jury, and resulted in a judgment for the defendants, which judgment was affirmed at a General Term of the Supreme Court. From the latter judgment the plaintiff appealed to this court. The facts are sufficiently stated in the opinion of the court.

*William D. White*, appellant, in person.

*Chauncey Tucker*, for the respondents.

HOGEBOOM, J.   The plaintiff sues in ejectment to recover from the defendants the possession of certain premises in Chautauqua county.   He claims title through John Z. Saxton who was the admitted owner in 1837, and he showed a regular deduction of title from and through him, sufficient to maintain the action unless it is defeated by facts to be hereafter noticed.   The defendants also claimed through Saxton, who, in August 1837, executed to the commissioners for loaning certain moneys of the United States, a mortgage upon said premises pursuant to the laws of 1837 (chap. 150), on which default was made in paying the interest due in October, 1842.   On the 6th of December 1842, an entry was made of this circumstance, and of the fact that the premises were advertised for sale for the first Tuesday of February then next, in the commissioners' book of minutes and in their annual report to the comptroller.   The premises appear to have been duly advertised for sale by publication and posting in the manner required by law, except that there was no *order* for the advertisement entered in the minute book; nor copy of the advertisement entered therein; nor entry of the places where, or of the persons by whom the advertisements were put up, all of which was enjoined by the statute before referred to.   The substance of the statute appears to have been observed in regard to the actual advertisement, and I am inclined to think the provisions as to the entries in the minute book above referred to were, notwithstanding the declaration of the statute (section 33), that "all purchases made contrary to the provisions of this (33d) section shall be void," directory rather than compulsory, as against a *bona fide* pur-

chaser ignorant of the irregularity. These irregularities were not violations of the provisions of the 33d section. (*King* v. *Stow*, 6 Johns. Ch., 323.) On the 7th of February, 1843, up to which time the plaintiff appears to have been in possession, the premises were duly sold by both commissioners, and struck off to one Newland, who then, or within a few days thereafter, received a deed in due form from the commissioners, went into possession and executed to the commissioners a new mortgage upon the premises. The defendants deduce a regular title through him. He paid his bid in cash to the commissioners, and the bid and subsequent transfer of title to the defendants was in his name, though he purchased. in fact, as the case states, for the benefit of the Chautauqua County Bank, but without any direction from the directors, by which I understand is meant that that institution was, by the purchaser, intended to have the benefit (if any) of the purchase. I scarcely think this was a violation of the charter of the bank (Laws of 1831, ch. 219), as the purchase was purposely made in the name of Newland and the title designed to be kept in him, although if the premises were subsequently sold at a profit, he meant that the bank of which he was the cashier should have the benefit of it. There was no disability in Newland to purchase, as there is in the case of trustees with regard to the lands of their beneficiaries, and therefore the purchase would not, I think, be void, but would inure to the benefit of Newland, if it could not be for the benefit of the bank. Such a transaction would not avoid the sale as against the plaintiff.

Although both commissioners were present at and made the sale, the entry of it in the book of minutes was made by only *one* of the commissioners and signed only by him, though purporting to be the act of both. This is claimed to be a fatal irregularity, under the case of *Olmsted* v. *Elder* (1 Seld., 144). But no such point was presented in the latter case; and since the case of *Pell* v. *Ulmar* (18 N. Y., 139) it must be regarded as overruled. Moreover, there is nothing in the law which requires this entry to be *signed* by the commissioners; and purporting, as it does, to be the *act of*

*both*, we cannot presume against the truth of such a statement simply because it is certified to be true by the signature of one commissioner.

There would appear, therefore, to be great doubt whether, if the case for the plaintiff rested upon the irregularity of the proceedings to foreclose the loan office mortgage, they were sufficiently defective to make them invalid. But I think an effectual answer to the plaintiff's claim consists in a fact now to be noticed. The plaintiff, who succeeded to the title of the mortgagor, suffered the mortgage to become foreclosed by operation of law by his delinquency in paying the amount due by the terms of the mortgage. This was held in *Pell* v. *Ulmar* (18 N. Y., 145) to be equivalent to a foreclosure pronounced by the decree of a court, and nothing remained in the plaintiff but a special privilege of redemption. The plaintiff went out of possession, and the defendants (or Newland) took immediate possession under a deed dated as of the day of the sale, and executed a few days afterward. It does not appear, it is true, as suggested by the plaintiff, that the commissioners took *actual* possession. They had no right to do so until after the day of sale, and then they did so in effect by putting their grantee in possession, who, or his successors, has occupied ever since. If we assume that the alleged irregularities in the sale were sufficient to vitiate it as such, nevertheless the default in the payment of the interest, as was held in the case of *Pell* v. *Ulmar*, from which this case cannot be distinguished, destroyed and foreclosed the plaintiff's title — destroyed even his common law equity of redemption, and left him nothing but a special right of redemption, to be enforced only by strict compliance with the provisions of the act of 1837. He had therefore no right which could be prosecuted by action of ejectment against the commissioners or their assignees. Newland took possession under the authority and consent of the commissioners, and having paid the amount of the mortgage must be regarded, equitably at all events, as a mortgagee in possession. If in under such a title he could not be dislodged by an action of ejectment, for such an action is forbidden by

the Revised Statutes. (2 R. S., 312, § 37.) But the case of *Pell* v. *Ulmar* holds that his rights are even less perfect than would be those of a mortgagor against a mortgagee in possession. The plaintiff's counsel has attempted, but I think unsuccessfully, to distinguish this case from *Pell* v. *Ulmar.* He is mistaken in supposing that Newland never took possession under his deed from Green & Douglas; and, I think also, in supposing that the deed was their *individual* deed. It *purported* to be on its face the deed of the commissioners, and such was the effect of the *acknowledgment.*

The judgment should be affirmed.

SELDEN, J. took no part in the decision. All the other judges concurring,

Judgment affirmed.