I think the judgement of the supreme court should be affirmed.

All the judges concurred.

Judgment affirmed, with costs.

---

## WHITE *v.* LESTER.

### September, 1864.

The omission of the loan commissioners to enter in their minute book the order for, and a copy of the advertisement of sale, and a designation of the places where, and the persons by whom, the advertisement was posted, does not affect the vitality of the sale, as against a *bona fide* purchaser, ignorant of the irregularity.

A purchase of lands by a bank cashier, for the benefit of his bank, is not necessarily invalid because the bank by its charter is disabled from purchasing lands.

Where both the commissioners for loaning United States moneys are present at, and make, a sale of mortgaged premises, the fact that the entry of the sale in the book of minutes, though purporting to be the act of both, was made by one only of them, and was signed only by him, does not amount to a fatal irregularity.[*]

William D. White sued Ebenezer A. Lester and others, in the supreme court, in ejectment, to recover a lot of land lying in Fredonia, Chautauqua county.

The only questions made in this court arose as to the regularity and effect of proceedings to foreclose a mortgage given by one Saxton, under whom both parties claim title, to the commissioners for loaning United States money.

*The supreme court* gave and affirmed judgment for the de-

---

[*] See York *v.* Allen, 30 *N. Y.* 104. Previous sales by one commissioner under the U. S. Loan Commission Act of 1837, was legalized, and sales by one commissioner, in case of a vacancy, authorized, by *L.* 1863, p. 109. c. 73, §§ 6, 9.

fendants, on a verdict found on the facts stated in the opinion.
Plaintiff appealed.

*William D. White*, appellant, in person, as to the indirect
purchase by the bank, cited Ohio *v.* Pell, 7 *N. Y.* 328; Chau-
tauqua Bank *v.* Risley, 19 *N. Y.* 369.   As to date of sale, Sher-
wood *v.* Reade, 7 *Hill*, 431; Olmsted *v.* Elder, 5 *N. Y.* 144.

That the purchaser was bound to take notice of the defects.
Sherwood *v.* Reade, *above.*   Sharp *v.* Speir, 4 *Hill.* 76.   The
deed was individual, not official.   Townsend *v.* Corning, 23
*Wend.* 435; White *v.* Skinner, 13 *Johns.* 307; Guyon *v.* Lewis,
7 *Wend.* 24; Hanford *v.* McNair, 9 *Id.* 54.

*C. Tucker*, for defendants, respondents, cited Pell *v.*
Ulmar, 18 *N. Y.* 139; King *v.* Stow, 6 *Johns. Ch.* 323; Hart-
well *v.* Root, 19 *Johns.* 345; *Cow. & H. notes*, 396, 397; Hick-
man *v.* Skinner, 3 *Munr.* 211.

BY THE COURT.—HOGEBOOM, J.—The plaintiff sues in
ejectment to recover from the defendants the possession of
certain premises in Chautauqua county.   He claims title
through John Z. Saxton, who was the admitted owner in
1837, and he showed a regular deduction of title from and
through him, sufficient to maintain the action unless it is
defeated by facts to be hereafter noticed.   The defendants also
claimed through Saxton, who, in August, 1837, executed to the
commissioners for loaning certain moneys of the United States,
a mortgage upon said premises pursuant to the *Laws* of 1837,
c. 150, on which default was made in paying the interest due
in October, 1842.   On Dec. 6, 1842, an entry was made of
this circumstance, and of the fact that the premises were adver-
tised for sale for the first Tuesday of February then next, in
the commissioners' book of minutes and in their annual report
to the comptroller.   The premises appear to have been duly
advertised for sale by publication and posting in the manner
required by law, except that there was no *order* for the adver-
tisement entered in the minute book; nor copy of the adver-
tisement entered therein; nor entry of the places where, or of
the persons by whom, the advertisements were put up; all of

which was enjoined by the statute before referred to. The substance of the statute appears to have been observed in regard to the actual advertisement, and I am inclined to think the provisions as to the entries in the minute book above referred to were, notwithstanding the declaration of the statute, section (33), that "all purchases made contrary to the provisions of this section (33) shall be void," directory rather than compulsory, as against a *bona fide* purchaser ignorant of the irregularity. These irregularities were not violations of the provisions of section 33. King *v.* Stow, 6 *Johns. Ch.* 323.

On Feb. 7, 1843, up to which time the plaintiff appears to have been in possession, the premises were duly sold by both commissioners, and struck off to one Newland, who then, or within a few days thereafter, received a deed in due form from the commissioners, went into possession and executed to the commissioners a new mortgage upon the premises. The defendants deduce a regular title through him. He paid his bid in cash to the commissioners, and the bid and subsequent transfer of title to the defendants was in his name, though he purchased, in fact, as the case states, for the benefit of the Chautauqua County Bank, but without any direction from the directors, by which I understand is meant that that institution was, by the purchaser, intended to have the benefit (if any) of the purchase. I scarcely think this was a violation of the charter of the bank (*L.* 1831, c. 219), as the purchase was purposely made in the name of Newland and the title designed to be kept in him, although, if the premises were subsequently sold at a profit, he meant that the bank of which he was the cashier should have the benefit of it. There was no disability in Newland to purchase, as there is in the case of trustees with regard to the lands of their beneficiaries, and therefore the purchase would not, I think, be void, but would inure to the benefit of Newland, if it could not be for the benefit of the bank. Such a transaction would not avoid the sale as against the plaintiff.

Although both commissioners were present at and made the sale, the entry of it in the book of minutes was made by only *one* of the commissioners and signed only by him, though purporting to be the act of both. This is claimed

to be a fatal irregularity, under the case of Olmsted *v.* Elder, 5 *N. Y.* 144. But no such point was presented in the latter case; and since the case of Pell *v.* Ulmar, 18 *N. Y.* 139, it must be regarded as overruled. Moreover, there is nothing in the law which requires this entry to be *signed* by the commissioners; and purporting, as it does, to be the *act of both,* we can not presume against the truth of such a statement, simply because it is certified to be true by the signature of one commissioner.

There would appear, therefore, to be great doubt whether, if the case for the plaintiff rested upon the irregularity of the proceedings to foreclose the loan office mortgage, they were sufficiently defective to make them invalid. But I think an effectual answer to the plaintiff's claim consists in a fact now to be noticed. The plaintiff, who succeeded to the title of the mortgagor, suffered the mortgage to become foreclosed by operation of law, by his delinquency in paying the amount due by the terms of the mortgage. This was held, in Pell *v.* Ulmar, 18 N. Y. 139, 145, to be equivalent to a foreclosure pronounced by the decree of a court, and nothing remained in the plaintiff but a special privilege of redemption. The plaintiff went out of possession, and the defendants (or Newland), took immediate possession, under a deed dated as of the day of the sale, and executed a few days afterward. It does not appear, it is true, as suggested by the plaintiff, that the commissioners took *actual* possession. They had no right to do so until after the day of sale, and then they did so in effect by putting their grantee in possession, who, or his successor has occupied ever since. If we assume that the alleged irregularities in the sale were sufficient to vitiate it as such, nevertheless the default in the payment of the interest, as was held in the case of Pell *v.* Ulmar, from which this case can not be distinguished, destroyed and foreclosed the plaintiff's title;— destroyed even his common law equity of redemption, and left him nothing but a special right of redemption, to be enforced only by strict compliance with the provisions of the act of 1837. He had, therefore, no right which could be prosecuted by action of ejectment against the commissioners or their assignees. Newland took possession under the authority and

consent of the commissioners, and having paid the amount of the mortgage, must be regarded, equitably at all events, as a mortgagee in possession. If in under such a title, he could not be dislodged by an action of ejectment ;—for such an action is forbidden by the Revised Statutes. 2 *R. S.* 312, § 37. But the case of Pell *v.* Ulmar holds that his rights are even less perfect than would be those of a mortgagor against a mortgagee in possession. The plaintiff's counsel has attempted, but I think unsuccessfully, to distinguish this case from Pell *v.* Ulmar. He is mistaken in supposing that Newland never took possession under his deed from Green & Douglass; and I think also, in supposing that the deed was their *individual* deed. It *purported* to be on its face the deed of the commissioners, and such was the effect of the *acknowledgment*.

The judgment should be affirmed.

All the other judges concurred, except H. R. SELDEN, J., who did not vote.

Judgment affirmed, with costs.