### HUME v. FLEET et al.

(Supreme Court, Appellate Division, Second Department. December 28, 1897.)

1. MORTGAGE—UNITED STATES LOAN COMMISSIONERS—FORECLOSURE.
　　In the case of a mortgage upon real property executed to the United States loan commissioners for the county, the result of a default in payment of interest operates, ipso facto, under Laws 1837, c. 150, § 30, as a foreclosure and extinction of the equity of redemption; vesting the title to the land in the commissioners, and leaving to the mortgagor no interest in the property, but merely a special right to redeem.

2. SHERIFF'S DEED—CONCLUSIVENESS OF RECITALS.
　　Upon a trial of an action, the recitals in a sheriff's certificate and deed of real property are not, alone, sufficient, even under Laws 1890, c. 158, as prima facie evidence of the execution and its issuance, unless it is also made to appear, among other things, that the property had been sold by the sheriff for enforcement of a valid lien thereon of a duly-docketed judgment.

Appeal from Queens county court.

Action by John F. Hume against Melancthon Fleet and others. From an interlocutory judgment directing a sale in partition of the premises described, Fleet and certain other defendants appeal. Modified.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Dennis McMahon, for appellants.

Clarence W. Francis, for the State.

WILLARD BARTLETT, J. This is a partition suit, in which the county court of Queens county has rendered an interlocutory judgment fixing the interests of the respective parties, and directing a sale of the property. The appellants insist that they are entitled to an actual partition of the premises, instead of being compelled to have the property sold, and, furthermore, that the county court erred in awarding to the state of New York any interest whatever in the lands in suit. These lands consist of meadow bordering upon a creek which flows into Jamaica Bay. In the complaint they are described in four separate parcels. They formerly belonged to Abraham Fleet, sometimes otherwise known as Abraham K. Fleet. On March 24, 1834, Abraham Fleet made a trust deed to James H. Hackett, Sarah Van Lew, and Warren Cornwell, for the benefit of his wife, Martha E. Fleet, his son, John K. Fleet, and any other children whom they might thereafter have born to them, which deed covered a portion of the premises in suit, as well as other property. This deed has been the subject of much litigation in the courts of this state. Its provisions were considered by the commission of appeals in the case of Woodgate v. Fleet, 44 N. Y. 1, and subsequently by the court of appeals in the same case. 64 N. Y. 566. The effect of the decision last cited was to uphold the validity of the deed, which embraced the first and second parcels, but only three-eighths of the third parcel, of land described in the complaint. On June 20, 1837, Abraham Fleet executed a mortgage for $500 to the United States loan commissioners for Queens county, covering the first, second, and third parcels of land described in the complaint; but, under the construction of the trust deed already mentioned, he had at the time no interest in such mortgaged premises, except an interest of five-eighths in the third parcel. He was the sole mortgagor, his wife not joining in the instrument. On October 27, 1849, Abraham Fleet made a second mortgage for $350 to the same commissioners, covering the same premises described in the first mortgage. In this instrument his wife, Martha E. Fleet, also joined. Under the trust deed she was entitled to a vested estate in remainder, which was subject to be devested only by her death prior to the termination of the trust,—an event which did not occur. Such remainder was alienable, devisable, and descendible. Moore v. Littel, 41 N. Y. 66; Sheridan v. House, *43 N. Y. 569. So that the effect of this second mortgage was not only to incumber the five-eighths interest in the third parcel, already spoken of as remaining in Abraham Fleet, but also to incumber his wife's remainder, which extend-

ed to one-sixth of the first two parcels, and one-sixth of three-eighths
of the third. The state of New York claims to have acquired these
interests of the husband and wife by virtue of a foreclosure of these
mortgages and a sale of the property, under the act authorizing the
loan of certain moneys belonging to the United States, deposited
with the state of New York for safe-keeping. Laws 1837, c. 150.
The evidence hardly suffices to prove the statutory sale contemplated
by this act, but it does show a default on the part of the mortgagors
to pay the yearly interest and principal moneys due upon the mort-
gages. In consequence of this default the thirtieth section of the
statute became operative, which declares that in such event "the
commissioners of the county where the lands mortgaged by the bor-
rower are situated, shall be seised of an absolute and indefeasible
estate in fee in the said lands, to them, their successors and assigns,
to the uses in this act mentioned, and the mortgagor, his or her heirs
or assigns, shall be utterly foreclosed and barred of all equity of
redemption of the mortgaged premises, any law, usage, custom or
practice in courts of equity to the contrary notwithstanding." By
virtue of this provision the mortgagors were devested of all title to
the property, and retained only a right to redeem as provided in the
act. The default in the payment of interest operated, ipso facto,
as a foreclosure and extinguishment of the equity of redemption:
vesting the title to the land in the loan commissioners, and leaving
to the mortgagors no interest in the property, but merely a special
right to redeem. Pell. v. Ulmar, 18 N. Y. 139. This privilege of re-
demption the mortgagors have never exercised, nor, so far as appears,
ever attempted to exercise.

It is argued that any claim that the state might otherwise assert,
growing out of the statutory foreclosure of these mortgages, is un-
tenable, by reason of certain execution sales before the mortgagors
defaulted in the payment of interest or principal, under which sales
one Woodgate acquired title. The judgment rolls and executions
under which these sales are said to have been made are not produced,
but the appellants rely largely upon the recitals in the sheriff's cer-
tificate and deed. These recitals are not sufficient, alone, to prove
a judgment or execution of that period. Goldman v. Kennedy, 21
Abb. N. C. 362, 1 N. Y. Supp. 599. And they are not supplemented
by other sufficient proof. It is true that chapter 158 of the Laws
of 1890 would make such recitals prima facie evidence of the exe-
cutions and of the issue of the same in this case, provided it also
appeared that the property had been "sold by the sheriff for the en-
forcement of the valid lien thereon of a duly docketed judgment."
But, as has already been said, there is no competent proof in this
record of the existence of any duly-docketed judgments under which
the sales are said to have been made.

The learned county judge before whom this case was tried fixed the
interests of the parties, as we understand his computation, in pre-
cise accordance with the views which we have expressed as to their
respective rights. In this respect, therefore, the interlocutory judg-
ment must be affirmed. We agree with the counsel for the appel-
lants, however, that the proof fails to show that an actual partition

·could not be made without great prejudice to the parties, and we think the judgment should be modified by directing such an actual partition. All concur.