4 k 569
154  501

4k  569
167  233

•

BERNARD SHERIDAN, Respondent, *v.* AMANDA M. HOUSE, Appellant.

TITLE TO REAL PROPERTY. RULE IN SHELLEY'S CASE. REVISED STATUTES IN REFERENCE TO ESTATES IN LAND. A VESTED ESTATE. ESTATE SUBJECT TO ALIENATION. WHAT ESTATE IN LAND IS SUBJECT TO SALE ON EXECUTION. CASES COMPARED.

The rule in Shelley's case, under which a grant to A for life, remainder to his heirs, vested a fee in A, is abrogated by the Revised Statutes of our State (3 R. S. 12, § 24, 5th ed.), and, under such grant, A takes an estate according to its terms, — that is, for life only.

" An estate is vested where there is a person in being who will take if the precedent estate then terminates."

Under a grant of lands to J. J. for life, and after his decease to his heirs forever, his children took at once, under our statute, a vested future estate ; for these were the persons in being, who would take in fee, whenever, by the death of their father, the precedent estate should terminate.

This vested future estate of each child, though liable to be defeated by his death before that of his father, is, nevertheless, under our statute law, devisable, descendible and alienable. (3 R. S. 13, § 35, 5th ed.)

Being alienable (upon a conveyance by J. J. to his children, as tenants in common, of his life estate), a deed of partition, executed by all the children but one, assigning and conveying to him a certain portion of such lands in severalty, with covenants for quiet enjoyment, etc., operates to place him in the same relation to the portion thus assigned and conveyed, which he sustained before the deed to his undivided share of the whole property ; that is, he holds, in severalty, an estate for the life of his father in the portion conveyed, and is entitled to the fee of each of his grantors and of himself under the grant to his father, provided each shall survive the father.

In other words, he takes, under the conveyance, besides the life estate of his father, the expectant estates of himself and of his grantors, subject to these being defeated by the decease of his grantors prior to the death of the father.

This estate or interest is "real estate," and, as such, is liable, under our statutes, to be sold on execution. (3 R. S. 637, § 4 ; 642, § 2 ; 648, § 38 ; 655, § 78, 5th ed.) The purchaser under such sale takes, of course, only the same estate, subject to the same liability to be defeated, as was vested in the son (judgment debtor), from whom he derives.

The essential difference between the opinion of GROVER, J. (which is to this extent only a dissenting opinion) and that of WOODRUFF, J., relates to the liability of this vested future or expectant estate to sale on execution. Without analyzing the argument of the learned judge, it is sufficient here to note his dissent to the first clause of the main proposition last above cited.

The decision of the case being governed by the principles enunciated above, the relation, of the parties to the action, to the estate in question and their particular rights and interests therein, can be better understood from an examination of the case, than from any abstract thereof in these notes.

Note the distinction marked by WOODRUFF, J., between this case and 4 Denio, 412; 5 id. 664; 2 N. Y. 19; 9 id. 49, and 28 id. 82.

APPEAL from judgment of Supreme Court, second district, in favor of plaintiff, rendered upon a case submitted by the parties. The question between the parties is, as to which, if either, has the legal title to certain lands situate in the city of Brooklyn. The material facts are, that Samuel Jackson formerly owned the lands in question, together with other lands in fee; that, in 1832, Samuel Jackson conveyed said lands to his son John, for life, and, after his decease, to his heirs and their assigns forever; that John Jackson, in 1844, had twelve children, and conveyed his life estate in said lands to his children as tenants in common; that in 1848, one of his children having died without issue, the said John Jackson conveyed said lands to his surviving children, by deed containing a covenant of seizen and for quiet enjoyment; that in 1849 the children and grantees of John Jackson made a partition of the lands between themselves, by which the lands in question were assigned to Richard Jackson, and conveyed to each respectively the lands assigned by the partition, by deed containing a covenant for quiet enjoyment as against the grantors and their heirs; that John Jackson died in 1861, prior to which time one of his grantees by the deed of 1849 died, leaving an infant child; that in 1855 a judgment was recovered against Richard Jackson, by virtue of which the lands were regularly sold by the sheriff of Kings county, and conveyed by him pursuant to such sale to the purchaser; that the defendant has acquired this title; that, in 1862, the lands were partitioned by action between the heirs of John Jackson, but no one having the title of the defendant was made a party, and by this last partition the lands in question were assigned to Richard Jackson; that in 1861 another judgment was recovered against Richard Jackson by

virtue of which the lands in question were regularly sold by the sheriff of Kings county to the plaintiff, and conveyed to him pursuant to such sale by said sheriff in 1868, under which conveyance the plaintiff claims title.

*D. P. Barnard,* for the appellant.

This is an appeal from a judgment ordered by the General Term of the Supreme Court for the second judicial district, in favor of the plaintiff against the defendant on a case submitted.

From this judgment the defendant appeals.

The case submitted establishes the following facts:

In 1832, Samuel Jackson was seized of a tract of land in the city of Brooklyn, called the Hay Scale Farm, including the premises in question, and conveyed the same to John Jackson, for and during his natural life, and after his death, then to his heirs and their assigns forever. The deed contained a covenant for further assuring the title to the premises to the heirs of John Jackson, "after his natural life," and the grantor warrants the premises to John Jackson, "for and during his natural life," and then to his heirs and their assigns.

John Jackson then had thirteen children. One of them died prior to 1844, and in that year John Jackson executed a deed purporting to convey the whole tract of land to his twelve surviving children, describing them as his children and heirs presumptive. One of these children died before 1848, and in that year John Jackson and wife executed a deed, with full covenants, purporting to convey the whole farm to his surviving children, of whom Richard Jackson is one.

In 1849, the grantees in the last mentioned deed undertook to partition among themselves the whole tract conveyed by Samuel Jackson, and executed two sets of partition deeds, the first of which was in question in *Moore* v. *Little* (see the statement of facts in that case, 40 Barb. 488.) The second set of partition deeds is that in question in this action.

By these deeds the premises in question were conveyed to Richard Jackson by his surviving brothers and sisters, with covenants for quiet enjoyment to him as against the grantors, their heirs and assigns.

On the 9th of September, 1856, the right, title and interest of Richard Jackson in the premises in question were sold by the sheriff, by virtue of an execution issued on a judgment recovered against him, and docketed July 25, 1856, to Herbert T. Moore, who afterward conveyed to the defendant, who now claims the premises under said sale. John Jackson died March, 1861. His daughter Fanny died before him, leaving one child, an infant, named Fanning Baldwin.

After the death of John Jackson, his children, disregarding all their former deeds, commenced an action for partition of the Hay Scale Farm. The defendant in this action was not a party to that action. A judgment of actual partition was ordered, and Fanning Baldwin had a part of the farm allotted to him in severalty, and the lots in question in this action were allotted to Richard Jackson.

On the 9th of February, 1857, the right, title and interest of Richard Jackson in the premises in question were sold by the sheriff, by virtue of an execution issued on a judgment recovered against him, and docketed April 1, 1861, and under that sale the plaintiff received the sheriff's deed, and now claims the premises under said sale.

The General Term ordered judgment for the plaintiff, having previously rendered a similar judgment in the case of *Parmenus Jackson* v. *Middleton*, when they gave the following opinion:

"It was decided by this court, in *Moore* v. *Little* (40 Barb. 488), that the children of John Jackson, during his life-time, had an alienable contingent estate in remainder in the lands in question in this action. That such children, at the death of their father, took a fee simple as purchasers under the deed from Samuel Jackson to John Jackson. The court at circuit fell into an error in supposing that an estate in expectancy, which could be aliened, might also be sold on execution. The statute is not broad enough to include future estates in

expectancy, among those estates or interests in land which might be sold. The statute, in reference to the lien of judgments and sales thereunder by the sheriff, charges such judgments only on lands, tenements, real estate, and chattels real, and directs the sale of only such estates by the sheriff. The sheriff's deed, therefore, conveyed no interest which continued after the death of John Jackson. The judgment should be reversed and a new trial granted. Costs to abide the event."

In reference to the statute as to lien of judgment, the court has referred to the Revised Statutes, and not to the Code. Section 282 of the Code says the judgment "shall be a lien on the real property," and section 289 directs the execution to be satisfied "out of the real property." Section 462 declares that the words "real property" are co-extensive with lands, tenements, and hereditaments.

The term "real estate," when applied to an interest in lands or other real property, includes all estates or interests in such real property which are held for life, or some greater estate. (*Westervelt* v. *The People*, 20 Wend. 416; affirming S. C., 17 id. 673.) In *Jackson* v. *Parker* (9 Cow. 73), the court held: "The term *estate* is very comprehensive, and signifies the quantity of interest which a person has, from absolute ownership down to naked possession. It is the possession of lands which renders them valuable, and the quantity of interest is determined by the duration and extent of the right of possession." Real estate, therefore, includes every possible interest in lands, except a mere chattel interest. A covenant for quiet enjoyment runs with the land. (*Rickert* v. *Snyder*, 9 Wend. 421; *Allen* v. *Culver*, 3 Denio, 295.) The purchaser under a judgment acquires all the title of the judgment debtor, and takes the benefit of covenants and estoppels running with the land. (*Sweet* v. *Green*, 1 Paige, 473; *Kellogg* v. *Wood*, 4 id. 578.) By the deed from Samuel Jackson to John Jackson, the whole estate of the grantor passed. No reversion remained in him. Before the Revised Statutes, according to the rule in *Shelley's case* (4 Kent Com. 214, lec. 59, § 4), John Jackson would have taken an estate in fee, as the word "heirs" was a word of limitation and not of pur-

chase. (*Brant* v. *Gelston*, 2 Johns. Cases, 384; *Schoonmaker* v. *Shelley*, 3 Denio, 485.) But, by 1 Revised Statutes, 725, section 28, the rule in *Shelley's case* is changed, and those who, on the termination of the life estate, shall be the heirs, take as purchasers by virtue of the remainder so limited to them. By sections 7 to 13 of the same article, the estate of the children of John Jackson, who were presumptively his heirs, was an "expectant estate;" and, by section 35 of the same article, such estates are "*alienable* in the same manner as estates in possession." (*Lawrence* v. *Bayard*, 7 Paige, 70; *Miller* v. *Emmons*, 19 N. Y. 384; *Wilson* v. *Wilson*, 32 Barb. 328; *Gilman* v. *Redington*, 24 N. Y. 10; *Everitt* v. *Everitt*, 29 id. 77.) By the deed from John Jackson to his children, they became seized of the premises as tenants for the life of their father, with an expectant estate in fee, liable to be defeated in the case of such as did not survive their father. (*Rogers* v. *Rogers*, 3 Wend. 503; *Talman* v. *Wood*, 26 id. 1; *Tanner* v. *Livingston*, 12 id. 83; *Doe* v. *Provoost*, 4 Johns. 61; *Moore* v. *Lyons*, 25 Wend. 119; *Williams* v. *Field*, 2 Sandf. Ch. 533; *Lawrence* v. *Bayard*, 7 Paige, 70.) By the partition deeds from these children to each other, and the covenants of quiet possession, the title which the grantors then had, and any right of possession which they afterward should be entitled to, was vested in the grantees. (*Vanderheyden* v. *Crandall*, 2 Denio; S. C. 1 Comst., 491; *Jackson* v. *Murray*, 12 Johns. 201; *Jackson* v. *Stevens*, 13 id. 316; *Jackson* v. *Hubbell*, 1 Cow. 613; *Bank of Utica* v. *Merserau*, 3 Barb. Ch. 528.)

At the time of the sheriff's sale, under which the defendant claims, Richard Jackson had the following title to said premises: First, as to one-eleventh — an estate in possession for the life-time of his father, with an expectant estate in fee, in case he survived his father. Both the estate for life and the expectant estate were alienable by him, and if by him, then by the sheriff for him on the execution. That share became vested in the defendant by virtue of that execution sale. Second, as to the remaining ten-elevenths, he had an estate in possession for the life-time of his father, with an expectant

estate in fee, in the case of such of his brothers as survived their father, with the benefit of the covenant of quiet possession running with the land. Of those ten shares, nine have become vested, and the other share was divested by the death of Fanny Baldwin. By the subsequent decree in partition, it may be urged that Richard Jackson acquired a new title to that one-eleventh, which was not affected by the judgment under which defendant claims. If these views are correct, it follows that the judgment below should be reversed, and a judgment ordered that plaintiff recover one undivided eleventh of the premises, and that the defendant recover the remaining ten-elevenths of the said premises.

*George W. Paine,* for the respondent.

I. This case presents some of the same points that arose in *Moore* v. *Little* (40 Barb. 488), and it is claimed by the respondent here, that if this court do not sustain that decision, then nothing passed by the sheriff's deed to Moore, and from Moore to the appellant here, except the estate for the life of John Jackson, which terminated at his death, in 1861, and, therefore, the judgment below was clearly right.

II. Under the provisions of the Revised Statutes, it is clear that the grant from John Jackson to his children passed only an estate for his life, of which they became tenants in common. The warranties therein contained are not binding upon the children, because they take as purchasers under the deed from Samuel Jackson, and not by descent from John Jackson, and because they have no assets by descent from the latter. The sections bearing on this subject are in the marginal paging. (1 R. S. 739, §§ 141–145; 725, § 28; 727, § 44; 3 id. 5th ed. 30, §§ 161–165; 12, § 28; 14, § 44.)

It is equally clear, that the deed in partition to Richard Jackson did not operate by way of release of the possibilities of future interest in the grantors; first, because it was made by tenants in common to tenants in common; and, second, because the grantees were not then tenants in possession of the freehold. In both these points this case is the opposite

of *Miller* v. *Emmons* (19 N. Y. 385); and these are the points on which that case was decided.

III. It is submitted, that the doctrine of estoppel cannot, on general grounds, have any application to this case. It must be conceded that the infant son of Fanny Baldwin (whose maiden name was Jackson), was not bound or affected in any way by his mother's warranty. She, in fact, never had any title to the property, but only the possibility of a title, which was destroyed by her death before her father. The infant is, therefore, the owner of one undivided eleventh of the whole tract; and the purpose for which the deed to Richard was made, to wit, the "making effectual partition of certain lands among the parties to these presents," has failed entirely, so far as any thing more than a life estate is concerned. Neither Fanny nor her heirs are bound by her warranty, and it is elementary that where both parties are intended to be bound by a warranty, and one party ceases to be, the other is bound no longer. (2 Smith Leading Ca. 438, note to *Trevivan* v. *Lawrence.*)

Estoppels are of equitable origin to prevent injustice. To invoke them here is to do wrong, not to prevent it. It is apparent from the case that no merchantable title in fee under the partition deeds could be made.

IV. The doctrine by which a grantor in fee with warranty is not allowed to claim under a subsequently acquired title is well settled, and is not now disputed. Whether it rests on the law of estoppel, or makes the warranty operate by way of rebutter to prevent circuity of action, or whether it acts as a conveyance, so that a subsequently acquired title, at the instant of its acquisition, inures over to the benefit of the grantee of his assigns, is not, perhaps, very material; though it is submitted that, under sections 141 to 144 (1 R. S. 739), the second is the more accurate opinion. It is that expressed by Senator TRACY, in *Jackson* v. *Waldron* (13 Wend. 178), and by PAIGE, J., in *Averill* v. *Wilson* (4 Barb. 187.) (See also Hare & Wallace's note, 2 Smith Leading Ca. 551, 552.)

However this may be, it is settled by authority, and in accordance with the equity of the case, that a grantee is not

bound by covenants of warranty in the deed to him, and may deny that the grantor had title at the time of the conveyance; and this is especially clear under the sections of the Revised Statutes referred to. (*Averill* v. *Wilson*, 4 Barb. 180; *Watkins* v. *Holman's Lessee*, 16 Pet. 25–51; *Blight's Lessee* v. *Rochester*, 7 Wheat. 535; PARKER, J., in *Hill* v. *Hill*, 4 Barb. 419; BRONSON, J., in *Osterhout* v. *Shoemaker*, 3 Hill, 513–519.)

V. The whole doctrine of estoppel is an equitable one, and where the true state of the title is apparent on the title deeds under which a party claims, the adverse party is not barred by any covenant in them. The whole claim rests on this deed from John Jackson, which, for this reason, is inoperative as a bar or estoppel. (*Brewster* v. *Striker*, 2 Comst. 19, is especially in point; Co. Litt. 352, b; 2 Prest. Abstr. 209; Hare & Wal. note, 2 Smith L. Ca. 524; *Doe* v. *Earl of Scarborough*, 3 Ad. & Ellis, 2, 9, 10, 12, 38; *Wheelock* v. *Henshaw*, 19 Pick. 341; *Hermitage* v. *Tomkins*, 1 Lord Raym. 729.)

VI. We come to the question whether the possibility that the children of John Jackson would survive their father, was an estate which passed to Richard Jackson by the partition deeds from the others. *Jackson* v. *Waldron* (13 Wend. 178, 196), settled "definitively and unalterably" in this State, that such an interest could not at law be aliened to a stranger. Is this changed by the enactment (1 R. S. 725, § 35), that "expectant estates are descendible, devisable, and alienable in the same manner as estates in possession?"

1. Possibilities, coupled with an interest, could always be conveyed in equity, by an agreement founded on an adequate consideration to convey that specific interest. It is not to be supposed that the legislature intended to extend this power unless they so expressed themselves distinctly and unequivocally. The presumption is, that, at most, they intended to assimilate the doctrine at law to that in equity, not that they intended to make general words in a deed pass every interest *in esse* or *in posse*, and thus overturn the whole law on the subject.

2. The Court of Errors, in *Edwards* v. *Varick* (5 Denio,

664–690), gave a construction to a grant, which, in its general language, was very similar to that used in the deed to Richard Jackson. That case was decided, not on the ground that such an interest could not be aliened in equity, but that it had not been. The enactment referred to does not profess to change the construction of deeds or the import of terms, but simply to make interests alienable at law which before were not, and this decision is, therefore, unaffected by it.

3. There was no estate whatever in the children of John Jackson before their father's death, except their estate for his life. *Nemo est hæres viventis.* Nothing, therefore, could pass to Richard Jackson except this life estate. The conveyance being by grant and deriving its effect from the statute, the fee remained in the original grantor, Samuel Jackson, until the death of the grantee, for life. (2 Prest. Abstr. 100.)

4. In this connection, the attention of the court is called to Senator TRACY's language in *Jackson* v. *Waldron* (13 Wend. 118): "The authorities are explicit and positive that a grant to the survivor of two or more" (and, more strongly still, a grant to the heirs of a person yet living), "gives to neither more than a *mere naked* possibility." And on page 222: "If Medcef Eden had *no interest* in the estate, and a *mere naked possibility is in law no interest,* then there was nothing which could pass by his release. *Ex nihilo, nihil fit.*" And NELSON, J., in S. C. *sub nom. Pelletreau* v. *Jackson* (11 id. 110), is equally explicit. And the court is reminded that *Edwards* v. *Varick* did not profess to decide that a naked possibility could be assigned in equity, but assuming this, for the sake of argument, that it had not been in that case.

Finally: In *Doe* v. *The Earl of Scarborough* (3 Ad. & Ellis, 2), where there was a tenant for life, remainder in tail, with proviso, that, if a certain event took place during the life of the first tenant, the remainder should be void and another remainder in tail arise, which was limited to an uncertain person, it was held, that neither a common recovery suffered by the tenant for life and the first remainder-man, nor a release and grant, in the fullest and most explicit terms, by the second remainder-man, could bar the proviso, nor pre-

vent the second remainder-man from recovering in ejectment on the happening of the contingency. And it may be said, in general, that interests which could not be barred by a common recovery and release, cannot be barred by any conveyance known to the law.

VII. Had the deed to John Jackson been delivered prior to the Revised Statutes, he would have taken an estate in fee under the rule in *Shelley's case :* "The word heirs, when used alone, without explanation, is always a word of limitation and not of purchase, and no presumed intention will control its legal operation. (4 Kent Com. 229; 6 Cruise Dig. 281, tit. 38, ch. 14, §§ 17, 21; p. 295, § 50; *Doe* v. *Jesson*, 5 Maule & Sel. 95; S. C. in Error, *sub. nom. Jesson* v. *Wright*, 2 Bligh, 1.)

No case can be found in which the ancestor takes a freehold, and, by the same conveyance, an estate in fee or in tail is limited to his heirs, in which this rule is not applied: "Wherein these words are not restrained or qualified, either by reference to other limitations, or else by additional words conjoined with them." And where the limitation over is to the heirs, using the plural form, no words of limitation ingrafted will convert them into *descriptio personæ.* (Fearne on Remainders, 181, 209; Butler's note to Fearne, 201; *Shelley's case*, 1 Rep. 93; *Schoonmaker* v. *Shelley*, 3 Denio, 486; *Brant* v. *Gelston*, 2 Johns. Ca. 384.)

VIII. The statute has provided, that "the persons who, *on the termination* of the life estate, shall be the heirs of such tenant for life, shall take as purchasers by virtue of the remainder so limited to them. (1 R. S. 725; 3 Johns. Ca. 5th ed. 12, § 28.)

The effect of this is to assimilate conveyances to which the rule in *Shelley's case* would otherwise have applied, to those in which the freehold was limited to a stranger, or where the prior estate was less than a freehold. (4 Kent Com. 232.)

The authorities are uniform, that, in deeds, the word "heirs" is never to be construed as *descriptio personæ*, and that in wills it is not to be so construed, unless from other clauses and limitations this is evidently the intent of the

testator. The word is to be taken in its technical sense, unless the contrary appears.

The case of *Campbell* v. *Rawdon* (18 N. Y. 415) is precisely in point. There was a devise to A for life, remainder to the heirs of B; *held,* that the word heirs was used in its technical sense; that it gave a contingent remainder to those persons who, at the testator's death, or, if he died before B, at the latter's death, answered to the description of his heirs, and that a child of B, who died before the latter, had no interest whatever in the estate.

The conveyance to John Jackson points out the time of vesting — "after his decease, *then* to his heirs and their assigns." And the covenants are drawn with the same special language.

IX. It was suggested by the chancellor, in *Lawrence* v. *Bayard,* that a remainder to one of a class who is not ascertained is vested under the definition in section 13, 1 Revised Statutes, 723; but the point was not decided, and the same section makes one class of contingent remainders those in which the person to whom the remainder is limited is uncertain. It is obvious, therefore, that the test of a vested remainder given by the revisors, is applicable only to those cases where the person to whom the remainder is limited is ascertained. But the relation of John Jackson's children to the remainder was not even an estate, as next will be shown.

X. There is a wide distinction between an estate, and the claim a party has to it. There was a remainder to the heirs of John Jackson; but his children, while he lived, had no title to, or estate in, this remainder. "In the case of a contingent or executory limitation to the right heirs of J. S., then living, the description of the person to take cannot be confined to or among any ascertainable person or persons during the life of J. S., nor can it, therefore, be said in whom such interest is, nor, consequently, that it is in any body during that period; nor will it be transmissible or descendible from any person dying before it becomes vested." The authorities are explicit and uniform that the children, during their father's life, have neither right, title, interest, nor estate in the land, neither

*jus in re* nor *jus ad rem*, but a bare, naked possibility, neither assignable, releasable, devisable, nor descendible at law. Contingent remainders, where the person to take is ascertained, are assignable (see *Roe* v. *Jones*, 1 H. Bla. 30); " but where there is an uncertainty in the person, no release can be made; and, therefore, if a lessee for life be made, the remainder to the right heirs of J. S., and the lessee is disseized, and the eldest son of J. S. releases to the disseizor, and afterward J. S. dies, the release is void, for it is uncertain whether he would be right heir at the time of the death of his father." (*Lampet's case*, 10 Rep. 51, a; Fearne on Remainders, 371; *Campbell* v. *Rawdon*, 18 N. Y. 415; *Doe* v. *Tomkinson*, 2 Maule & Sel. 165; 4 Kent Com. 208.)

" He has not even a contingent interest. He has merely a possibility, without any interest. (3 Prest. Abstr. 5, 6, 255; 2 id. 95, 96, 205; 1 Hill. Abr. ch. 41, §§ 18, 33; 1 El. § 366, 3d ed. 515, 517; Co. Litt. 343, a; *Nicoll* v. *N. Y. & Erie R. R. Co.*, 12 N. Y. (2 Kern.) 121; *Jackson* v. *Catlin*, 2 Johns. 248, 261; 4 Cruise Dig. 304, tit. 32, ch. 23, § 1, p. 307; § 10, p. 308; § 15.)

XI. At common law a feoffment, with livery to A for life, remainder in contingency, left the fee in abeyance. It did not pass to the feoffee. In conveyances deriving their effect from the statute of uses, " if the use of the fee be limited in contingency, the fee will result to the grantor till it can vest." The discussion between Fearne and Preston, Cornish, Kent, and the other text-writers as to the effect of a feoffment, shows very clearly that the fee does not pass to the feoffee or grantee, and, therefore, that no fee was in John Jackson's children until his death. On this point the authorities are uniform. (2 Prest. Ab. 83, 84, 99, 100; 1 Hill. Abr. ch. 49, § 1, 408, 1st ed; p. 553, 3d ed; Fearne on Remainders, 528; 4 Kent, 258; Greenl. note to 2 Cruise Dig. 830, tit. 16, ch. 8, § 2.)

XII. Grants at common law, to which deeds are now by our statute assimilated, passed only the estate which the grantor had at the time, and did not divest any precedent estate. It is observable, also, that the statute which makes

a grant to A, for the use of or in trust for B, vests the estate at once in B, is similar to the statute of uses, and that all our deeds contain clauses, as to the use of the land, similar to those in conveyances which derived their effect from that statute. (4 Cruise Dig. 52, tit. 32 ch. 4, §§ 41–44.)

XIII. It is submitted, that, under the decision of the Supreme Court in *Moore* v. *Little*, the sheriff's deed, under which the defendant claims, could, if it operated further than to pass the life estate, have only carried with it, at most, one undivided eleventh of the premises, and that the appellant would, under his sale, take the balance, or ten-elevenths of the premises.

The decision in *Moore* v. *Little* settles the law, that, prior to the judgment in the action for partition, Fanning Baldwin owned one undivided eleventh of the Hay Scale farm. The object of the partition deeds, which appears on their face to have been that each tenant in common should hold his share in severalty free from all claim, liability, interest, and estate of any other tenant in common in said premises or any part thereof, was, by the death of Fanny Baldwin, one of John Jackson's daughters, in her father's life-time, defeated. Title failed to the one undivided eleventh which she undertook to convey. The whole partition, therefore, failed, and the parties to it were remitted to their original estates. (*Bustard's case*, 4 Coke, 121 b; S. C. Yelv. 8; Co. Litt. 173 b, 174 a; *Quick* v. *Stuyvesant*, 2 Paige, 84; 3 Cruise Dig. 139, 14. ch. 4, §§ 4, 8.)

The original one-eleventh of Richard Jackson was all the contingent interest that remained in him in the premises in question after the death of his sister Fanny.

XIV. As to any interest beyond the life estate of John Jackson (which expired March, 1861):

The partition deeds were executed prior to the sheriff's sale, and before John Jackson's death, and conveyed to the plaintiff only the same kind of interest in the premises which he himself had, and that interest was not the subject of levy and sale on execution.

There was no person in being, during the life-time of John

Jackson, who stood, or could stand, in the relation or charac-
ter of heir to him, and, consequently, no one who could be
to have an immediate right of possession to the land on the
termination of his life estate. Until that event, it remained
unknown and uncertain what persons would be his heirs and
entitled to take. Such an estate is not subject to levy and
sale on execution. (*Striker* v. *Mott*, 28 N. Y. 82; *Harris* v.
*Murray*, id. 574; and see *Striker* v. *Mott*, 2 Paige, 387.)

At common law it was a mere naked possibility, not assign-
able nor releasable, except, perhaps, to the tenant in posses-
sion. (2 Prest. Ab. 5, 6; 2 id. 95, 96, 205; Fearne on Remain-
ders, 371; *Jackson* v. *Waldron*, 13 Wend. 178, 196; 11 id.
110, S. C; *Lampet's case*, 10 Coke, 51 a; *Doe* v. *Tompkins*,
2 Maule & Sel. 165.)

It was contingent on his surviving his father, John Jack-
son, and did not vest or accrue until the death of the latter.
Until that event he had no present interest. If it could be
sold, the grantor's (Samuel Jackson) intention would be
defeated. (See terms of deed, "after John Jackson's death,
*then* to his heirs.")

If it be said that, by the Revised Statutes (vol. i. p. 725,
§ 35), expectant estates are descendible, devisable and alien-
able, it is very clear that the interest of Richard Jackson
would not, in the event of his death in his father's life-time,
have been descendible or devisable — it would have been
extinguished. If he survived his father, his estate in fee
would be a perfect one, no statute was required to render it
descendible, devisable, or alienable. The revisers have con-
founded all future estates. Where there is a possibility,
coupled with an interest, it is descendible and devisable.
(*Roe* v. *Griffiths*, 1 W. Bla. 605; *Moore* v. *Hawkins*, 2 Eden,
342; 1 *Roberts* v. *Wills*, 212; 4 Kent Com. 510.)

In the present case there was no person who could take;
therefore there was no interest and no future expectant estate.

XV. The Code does not profess to extend the interests
which can be sold on execution; it describes the interests
subject to sale, as lands, tenements, and hereditaments.
(Code, §§ 282, 289. 462.)

A contingent remainder, when the person to take is uncertain, does not come within any of these classes; it is not land; tenure cannot be predicated of it, and, in a case like the present, it is clearly not heritable. (2 Bla. Com. 15, 59; see *Payne* v. *Beal,* 4 Denio, 405; 2 Fearne on Remainders, 20, 21.)

It is clear, that, at common law such an interest could not be sold on execution. It could not be conveyed. (3 Prest. Ab. 352; Greenl. note to 2 Cruise Dig. 42, vol. i., Greenl. ed. p. 517; *Allstons* v. *The Bank,* 2 Hill Ch., S. C. 235.)

What interest did Richard Jackson have, on 25th of July, 1856, to which a judgment or execution would attach? Neither judgments nor execution would bind choses in action, estates at will or sufferance (*Bigelow* v. *Finch,* 17 Barb. 394), or equitable interests in real estate (*Griffin* v. *Spencer,* 6 Hill, 525; *Brewster* v. *Striker,* 2 Comst. 19.) In the case of *Striker* v. *Mott* (28 N. Y. 82), a partition and deeds under it existed at the time of the sale. These cannot be sold on execution, and all those are more substantial than that of Richard Jackson in these premises, at the time of the sheriff's sale, in September, 1856.

Equity would, perhaps, enforce a contract to convey such a possibility, upon proof that the contract was made upon adequate consideration. (*Varick* v. *Edwards,* 5 Denio, 644, 690; 2 Story Eq. § 1040, c. d. § 1021; *Pope* v. *Whitcombe,* 3 Russell, 124; *Whitfield* v. *Fausset,* 1 Ves. Sen. 387.)

But it is well settled that equitable estates, even though the *cestui que trust* is in possession claiming as better owner in fee, are not subject to sale on execution. (*Brewster* v. *Striker,* 2 Comst. 19; *Sage* v. *Cartwright,* 9 N. Y., 5 Seld. 49; *Scott* v. *Scholey,* 8 East. 467.)

The partition by the court, in 1863, cannot inure to the benefit of the appellant.

The covenants in the partition deeds were for quiet enjoyment only, and whatever may be their effect as between the children of John Jackson, they were not the subject of sale on execution, being a mere chose in action. (*Denton* v. *Livingston,* 9 Johns. 96; *Bogert* v. *Perry,* 17 id. 360.)

The respondent, therefore, insists that the judgment below ought to be affirmed.

Woodruff, J. It is not questioned, that, by the grant made in 1832, by Samuel Jackson to John Jackson, for and during his natural life, and after his death, then to his heirs and their assigns forever, the immediate grantee took an estate for life only, and that a remainder in fee was limited to such persons as were, at his death, his heirs at law.

Nor is it questioned that by the conveyance of John Jackson to his children, they acquired, as tenants in common, each an estate for his life in one undivided eleventh part of the land, and that the limitation in remainder gave them, as his heirs presumptive, an estate, interest or expectation, which at his death, they being still alive, would become in them severally an absolute fee.

If that estate, interest or expectation was alienable, then the deed of partition executed by the eleven children operated to place Richard Jackson (one of their number), in the same relation to the lots assigned and conveyed to him in severalty, in which he was before that deed, to the undivided one-eleventh of the whole property; that is to say, he held an estate for the life of John Jackson in the lots so allotted and conveyed to him in severalty, and he would be entitled to the fee of each one-eleventh part thereof, provided, in respect to each eleventh, the grantor thereof should survive John Jackson.

The partition deed was something more than a release; (*Miller* v. *Emons*, 19 N. Y. 388) as between tenants in common it would operate as a grant ; it granted with covenants for quiet enjoyment.

True, if he, or either of his grantors in partition, died before John Jackson, that might defeat the title to the one-eleventh purporting to belong to, or be conveyed by, the one so dying, but that is all.

The technical inquiry as to what, and between whom, a mere release at the common law may operate, is not material; here were words of grant and conveyance, and if the grantors

had an estate or interest which was alienable — beyond their interest for the life of John Jackson — then this partition deed operated to convey it. The parties were in possession by virtue of the estate, *pur antre vie.* They each held the relation to him in which, if they survived him, their estate would be a fee simple in one-eleventh each, and if that fact gave them an alienable estate or interest, no rule of law, technical or otherwise, forbade that their conveyance to one of the tenants in common, having a like estate or interest, and being in possession, should be effectual.

On the other hand, if the several grantors in that deed had no estate or interest in the land which was alienable, it conveyed nothing, and considering that deed simply as a conveyance, the defendant here has no estate in the lots, because the estate which she claims was derived from a conveyance to her, or to her grantor, before the death of John Jackson. Whether that deed operated as an estoppel, so as to assure to Richard Jackson the fee, when in fact the grantors did survive John Jackson, and thus assured to her the title which they had proposed to convey, I shall not consider.

I prefer to rest my conclusions upon the answer which should be given to the question whether the children of John Jackson had before his decease an alienable interest or estate in the premises, and by this to test the effect of the partition deed and the validity of the defendant's title. And in my opinion the consideration of this question will also determine whether, if alienable, the interest or estate of Richard was subject to levy and sale upon execution against his property.

The circumstances of the present title would not at the common law have presented the question. The abrogation of the rule in Shelly's case has created a state of things which at the common law could not exist; thus by the common law under the rule in Shelly's case, a grant to A for life with remainder to his heirs, gave to A a fee; no question under the law of remainders could therefore arise under such a grant. And that is the case now before us in which Samuel Jackson conveyed to John Jackson for life with remainder to his

heirs.    On the other hand, a grant to A for life with re-
mainder to the heirs of B did present a case to which the
law of remainders was of course applicable.

In considering the effect of the grant under consideration,
made since the rule in Shelly's case was abrogated, we may
seek for an analogy in the example last named, to wit, a grant
to A for life with remainder to the heirs of B.

In such case the limitation over to the heirs of B is by the
common law wholly contingent.    It is not only impossible
during the life of B to say who will be his heirs, and hence,
who will be entitled to claim under the limitation; but if B
is living at the death of A, the remainder over will wholly
fail, because it cannot take effect at the expiration of the
precedent freehold estate upon which it is limited.    This last
result is now prevented by our Revised Statutes (1 R. S. 705,
§ 34), and therefore the limitation over is operative, and when-
ever B dies it will take effect for the benefit of those who may
be his heirs.    In such case, however, so long as B lives (A
being also living), there can be no vested estate in remainder
under our statutes, because there are no persons in being
who would have an immediate right to the possession of the
land upon the ceasing of the precedent estate; that is, if A
were to die to-day, it would still be uncertain who are the
heirs of B, and therefore, there is no one who under the
grant is entitled to the possession.

But now suppose B dies, then the estate would vest, and
for the reason that there are now persons in being, who, if
A dies to-day, will be entitled to immediate possession.
Whether the estate or interest can be defeated by the death
of such persons, or by any other future event or not, their
interest is vested according to the very terms of our statute.

It is this precise alternation of circumstances which fur-
nishes examples within the contemplation of our statute in
its definition of a "vested future estate" and a "contingent
future estate."

1. An estate is vested where there is a person in being
who will take if the precedent estate then terminates.

2. An estate is contingent while the person to whom

\*   \*   \*   it is limited is uncertain, — *i. e.* while it is uncertain who will take if the precedent estate then terminates.

One definition is the converse of the other and they are to be read together.

In the case supposed, then, on the death of B (A being still alive), the heirs of B are in a condition to take if A then die, and their estate is by the terms of the statute a future vested estate.

This, in my judgment, illustrates the new case made by our statute abrogating the rule in Shelly's case.

Thus John Jackson took a life estate, and every child of his, bearing to him such relation, that, at any moment, he would, if John Jackson then died, be entitled to immediate possession, and to hold in fee, had a "vested future estate" under our statute. It was vested because by the death of John Jackson the precedent estate terminates, and such child, then in being, becomes *eo instanti* entitled to immediate possession, which is the precise character of one who in the language of our statute has a future vested estate.

This vested estate might be defeated, because such child might die before his father; but the statute has, nevertheless, made his estate a vested estate, notwithstanding the grant under which he claims has annexed a further condition which may defeat it.

In short, the statute has made this remainder (although its benefical enjoyment depends upon the condition that he survives his father), a vested remainder liable to be defeated by a condition subsequent.

Such an estate is, in its nature, devisable, descendible and alienable. (1 R. S. 725, § 35.) This is made a general rule, going much farther, and embracing all expectant estates. In this particular case the death of the party in whom it is vested, before the termination of the precedent estate, would defeat it, but this does not change its legal character; it is still a vested estate, although death may defeat it. It is, therefore, alienable, subject to that contingency, and the deed of partition was therefore operative.

The question remains, could this estate, vested in interest,

but liable to be defeated by the death of the persons to whom it was limited, be sold under execution ?

Our statutes, declaring the lien of judgments, and authorizing sales by virtue of execution, apply to "lands, tenements, real estate and chattels real." (2 R. S. 359, § 3; 363, § 2; 367, § 24, *et seq. ;* 373, § 61, *et seq.*)

If the words lands or real estate embrace such an estate as that in question, then it was subject to sale on execution, and the defendant acquired title defeasible as to any share of one-eleventh, by the death of one of the eleven children of John Jackson, before his decease, and actually defeated as to the one-eleventh conveyed to Richard Jackson by his sister, Fanny Baldwin, who died before her father.

Concede that a possibility of reverter, as in 4 Denio, 412, a naked possibility, as in *Varick* v. *Edwards* (5 Denio, 664), or a merely equitable interest, trustees being in possession, holding the legal title, as in *Brewster* v. *Striker* (2 N. Y. 19); or other purely equitable interest, unaccompanied by possession, as in *Sage* v. *Cartwright* (9 id. 49), or a contingent remainder, as in *Striker* v. *Mott* (28 id. 82), cannot be sold on execution. This is far short of holding that a vested estate in remainder, only liable to be defeated by a subsequent event, may not be.

The subject of sale here was an estate in the land, a legal estate, vested in interest by the very terms of the statute, and alienable by the owner thereof; this is "*real estate*," and by such name is subject to levy and sale.

For these reasons, I think the judgment of the Supreme Court must be reversed.

The appellant appears, by the pleadings, to claim but ten-elevenths of the premises, and seems to concede that the death of Fanny Baldwin defeated her title to one-eleventh of the premises. This is clearly so at law; and it is not claimed that there are any equities arising out of the partition deeds which inure to the benefit of the defendant, to make her purchase effectual as to that one-eleventh.

The judgment should be reversed, and judgment ordered

affirming the title of the defendant to ten-elevenths, and of the plaintiff to one-eleventh part of the premises in fee.

GROVER, J. (dissenting.) The rule adopted in Shelley's case would give John Jackson an estate in fee simple by virtue of the deed from his father. This fee would have passed to the children of John by his deed to them. The children having thus acquired the fee, the partition made by them, and the conveyances in pursuance thereof, would have given a perfect title to the land in question to Richard Jackson, and the sale made by the sheriff in 1856, and the conveyance by the sheriff to the purchaser would have vested this title in the purchaser, and thus made the title of the defendant complete. But the rule established in that case and subsequently followed, was abolished by the Revised Statutes (vol. 1, 725, § 28). This section made the estate of John Jackson one for his life only, and provided that his heirs should take as purchasers by virtue of the remainder limited to them by the deed. It follows that nothing but this life estate passed to his children by virtue of the deed from John Jackson to them at the time of the sale by the sheriff, under which the defendant claims title. This was all the estate any of the children of John Jackson had ever had in the premises, unless they acquired some title thereto under the deed from Samuel Jackson to John Jackson. This deed conveyed the premises to the heirs of John Jackson from and after his decease. It thus appears that no one acquired any vested interest in this remainder, because no one could be heir of John Jackson during his life. (*Campbell* v. *Rawden*, 18 N. Y. 412, and cases cited.) It was uncertain which, if any of the children would survive their father, and therefore uncertain which, if any, of the children would acquire any estate in the land. The remainder limited by the deed from Samuel to John, was therefore a contingent remainder, and could vest in no one until the death of John, by which event his heirs would be ascertained, and the remainder vest. This leads to an inquiry as to what may be sold upon execution against the judgment debtor. The Code (§ 289) provides that the execution shall

command the sheriff, that in case sufficient personal property cannot be found to satisfy the judgment, then to satisfy it out of the real property belonging to the judgment debtor on the day when the judgment was docketed in the county, or at any time thereafter. The Code (§ 462) provides that the words "real property," as used in the act, are co-extensive with lands, tenements and hereditaments. This shows that the Code has made no change in the pre-existing law, as to what interests in or claims to real estate may be sold upon execution. It follows that nothing can be sold upon execution as real estate, except a legal estate therein. The children of John Jackson had no such title to any estate in the lands in question during his life-time, except his life estate conveyed by him to them, and consequently no greater estate could be sold upon execution against them or any of them. The question whether the possibility of the children acquiring title upon the death of their father could be conveyed by them has been discussed by counsel. However this may be, it is clear that it could not be sold upon execution, as it was not a legal estate in the land. This view, if correct, shows that nothing passed under the sale and conveyance made by the sheriff in 1856, except the life estate of John Jackson, unless the rights of the parties to this controversy have been changed by the conveyances made by the children of John to each other, pursuant to the partition made by them of the lands in question, together with other lands held by them under the same title in 1849. At this time all the children of John Jackson, except Richard, conveyed to him the lands in question by deed containing a covenant for quiet enjoyment as against the grantors, their heirs and assigns. By the subsequent death of John Jackson in 1861, leaving Richard Jackson and nine of his grantors him surviving, and an infant child of one of the grantors also surviving (the parent having in the meantime died) his heirs, the remainder created by the deed from Samuel to John vested in them as tenants in common, one-eleventh in each. Thus the title of nine-elevenths of the land in question became vested in the grantors of Richard Jackson, who had conveyed the land in

question to him with a covenant for quiet enjoyment as against themselves, their heirs and assigns.

It is clear that neither of these grantors, nor any person claiming under them, by title derived subsequent to their conveyance to Richard, could assert, as against him or those claiming under him, any title to the land in question. They would be precluded from so doing by the covenant of warranty in the deed to Richard. The title they acquired upon the death of John Jackson by the operation of this covenant inured to and vested in Richard Jackson and his grantees. This is the result of the application of the unquestioned rule, that a title subsequently acquired by one who has granted the land with covenant of warranty inures to the benefit of his grantee. Whether this principle is based upon an estoppel imposed upon the grantor by reason of his covenant, or a rule adopted to avoid circuity of action, has been discussed by counsel, but both concede the rule. I am unable to perceive any difference in the present case, whichever may be the true reason. This covenant of the children of John Jackson in the conveyance to Richard, run with the land, and had not been broken in 1856, at the time of the sale and conveyance by the sheriff, under which the defendant claims. It then constituted a part of Richard Jackson's title to the land, and passed to the purchaser at a sale by the sheriff, upon an execution issued upon a judgment against him. (*Sweet* v. *Green*, 1 Paige, 473; *Kellogg* v. *Wood*, 4 id. 578.) This covenant, therefore, inures to the benefit of the defendant, and makes her title perfect to nine-elevenths of the land in question. As to the one-eleventh which vested in the infant child of the grantor that died, this reasoning will not apply. That child took the eleventh under the deed from Samuel to John Jackson, and not as heir of his mother, — consequently her warranty is not binding upon him. There is nothing to prevent his asserting his title to one-eleventh of the land in question; at any rate, the defendant has not acquired his interest. The further question must be determined, whether the plaintiff has acquired it. It appears from the case that after the death of John Jackson, a partition was

made by action between his heirs, to which this infant child was a party, by which the land in question was adjudged to Richard Jackson. This judgment would, while in force, effect a transfer of the interest of this child in such lands to Richard, and it, together with the eleventh, acquired by him upon the death of John Jackson, became vested in the plaintiff by virtue of the sheriff's sale to him made after the happening of these events. It is claimed by the plaintiff's counsel that the entire partition made by the children during the life of John Jackson, and the conveyances made to effectuate it, became void by reason of the death of one of the children during his life, and the acquisition of one-eleventh by the infant, who was not bound by such partition and the conveyances. It is true that the infant was not bound, but this did not at all impair the validity of the partition or the conveyances as to the others. They were bound, and none of them could claim any interest in any parcel previously conveyed with warranty. The right of each, acquired at the death of John, at once vested in the grantees. It follows, that the plaintiff is entitled to judgment for two-elevenths, and the defendant for nine-elevenths, of the land in question.

The judgment of the Supreme Court should be modified accordingly.

All the other judges concurring in the views of WOODRUFF, J.,

Judgment ordered accordingly.