BLANCHARD v. BLANCHARD.

*Will — construction of.  Suspension of power of alienation — what is not in conflict with statute against.*

A testator gave to his wife and two youngest children certain personal property, and " the use of my home farm until the 29th day of June, 1890, the personal property and the use of said farm to be under the exclusive control and management of my wife," after which date the executors were directed to sell the farm, and divide the proceeds in a specified manner.  *Held,* (1) that the interest in the farm of the wife and children was a chattel real; (2) that they took as tenants in common; (3) that the words " the personal property and the use of said farm to be under the exclusive control and

management of my wife " were sufficient to create a valid power in trust, and (4) that the postponement of the power of sale until 1890 was not a suspension of the power of alienation within the provision of the statute against perpetuities, and was valid.

APPEAL from a judgment in favor of defendant, entered upon the decision of the court.

The action was brought by Kendrick Blanchard against Lucretia Blanchard and others, to obtain the partition of certain real estate, which had been owned in his life-time, by one Reuben Blanchard, who died in March, 1873. The deceased left a last will containing these provisions.

"Second. I give and bequeath to my beloved wife Lucretia and my two youngest children Emma Jane Blanchard and Reuben Earl Blanchard, all my personal property; also the use of my home farm where I now reside, on lot number fifty-five, in the town of Victory, county of Cayuga, consisting of about two hundred and nine acres of land, until the twenty-ninth day of June, eighteen hundred and ninety, the personal property and use of said farm to be under the exclusive control and management of my wife, without interference by any person whatever, which is to be received by her in lieu of dower.

" Third. I order and direct my executor to sell my farm of about fifty acres, on lot number twenty-nine, in town of Victory, county of Cayuga, and out of the avails of said farm to pay off and satisfy all of my debts, and pay for the erecting of my tombstone as hereinbefore stated, and the rest and residue arising from the sale of the fifty acres to lay out in repairs to be made upon my said home farm where I now reside, as my said wife and executor shall see fit to apply the same.

"Fourth. I order and direct that within two years after the twenty-ninth day of June, eighteen hundred and ninety, my said executor shall sell my home farm where I now reside, on lot number fifty-five, in the town of Victory, consisting of about two hundred and nine acres of land, and first out of the avails arising from such sale to vest and put at interest the sum of two thousand dollars, and to pay the interest to my said wife annually, and if the interest is not sufficient to give her a good and ample support, then that she draw from the principal, from time to time, as may be necessary to give her a good and ample support, and maintenance during her natural life.

"Fifth. I give and bequeath to my two youngest children, Emma Jane Blanchard and Reuben Earl Blanchard, the two thousand dollars, or all that may remain of the same, vested or put at interest for the benefit of my wife, after her death to be equally divided between them."

By the sixth clause of the will he gave various legacies to his children and grandchildren. The clause closed thus: "I also give and bequeath to my daughter Emma Jane Blanchard the sum of $1,000, and to my son Reuben Earl Blanchard the sum of $1,000, all to be paid out of the avails of the sale of my said home farm."

"Seventh. I further order and direct that in case my said wife should die before the twenty-ninth day of June, eighteen hundred and ninety, that the two thousand dollars which I have hereinbefore ordered to be vested for the benefit of my wife, be immediately paid, after the sale of my farm where I now reside, as hereinbefore directed, to my two youngest children, Emma Jane Blanchard and Reuben Earl Blanchard, share and share alike.

"Lastly, I order and direct that all of the rest and residue and remainder of my property, not hereinbefore disposed of, be divided among my children and grandchildren hereinbefore named, in proportion to the several sums of money hereinbefore bequeathed to them."

The court below decided that the devise for the term of years was valid independently of the provisions for the estate in remainder, and that as to the remainder, although the principal devise was void, the estate passed to the persons therein referred to by the residuary clause.

*James Lyon,* for appellant.

*John D. Teller,* for respondents.

Present — MULLIN, P. J., E. DARWIN SMITH and GILBERT, JJ.

GILBERT, J. We agree that the judgment below should be affirmed, but we cannot concur with the learned judge in the exposition which he gave to the will. If the reasons for his judgment appeared therein, this general declaration might suffice, but as they do not, it is proper, in order to prevent future litigation, to give very briefly our views respecting the legal effect of the will. We are of opinion that all the testator's gifts are valid.

VOL. VI, N. Y. REP. — 70

The interest in the "home farm" devised to his wife and two minor children by the second clause, is an estate for years, and is denominated in law a chattel real. 1 R. S. 722, § 5; 1 Washb. Real. Prop. 310. The distinction that once prevailed between the devise of the use of a chattel interest and the devise of such interest itself is now practically exploded. 4 Kent's Com. 269; Fearne on Conting. Rem. 407. Such an estate is treated as personal property in every respect. In case of the death of the owner, it goes to the executor and not to the heir at law. 2 Kent's Com. 342. The devisees, therefore, took the gift to them as tenants in common, notwithstanding it is one of personal property, for it is provided by statute that every estate devised to two or more persons shall be a tenancy in common, unless expressly declared to be in joint-tenancy (1 R. S. 727, § 44), and that provision embraces all estates in lands, whatever may be the duration of them. The remark of Surrogate BRADFORD on this subject in *Putnam* v. *Putnam,* 4 Bradf. 309, was too broad.

We think the words, "the personal property and the use of the farm to be under the exclusive control and management of my wife," are sufficient to create a valid power in trust. No precise form of words is necessary to create such a power. Any words, however informal, which clearly indicate an intention to give a power are sufficient for that purpose, and it may be created to do any act which the grantor himself might lawfully perform. 1 R. S. 732, § 74. It is not a trust for two reasons : first, because the statute on this subject requires the legal estate to be vested in the trustee in order to create a valid trust; and, secondly, it does not authorize such a trust. But the object is protected as a power in trust by the 58th section of the same statute. 1 R. S. 728, §§ 49, 55; id. 729, § 58; *Downing* v. *Marshall,* 23 N. Y. 375, *et seq.*

The learned judge at special term expressed the opinion that the power of sale of the "home farm" given to the executor was void, for the reason that the postponement of the execution thereof worked an illegal suspension of the power of alienation. That is a very important practical question. Powers of sale, to be executed after the lapse of a period which may extend beyond two lives in being, have been commonly inserted in wills of real estate, and if it should turn out that such powers are illegal, many wills will be invalidated. We are of opinion that the power in this case, being a naked power of sale, did not suspend the power

of alienation. It is quite manifest that no estate or interest was devised to the executor. The whole estate of the testator, excepting the term given to the wife and minor children, would have descended immediately upon his death to and vested in his heirs but for the last clause in the will. By that clause it was devised to his children and grandchildren, as residuary devisees, subject to the term devised to the widow and minor children, and subject also to the execution of the power after the termination of their estate for years. 1 R. S. 729, § 59. The power conferred upon the executor was no more than a bare authority to sell the lands, an act expressly authorized by the statute of powers, whether the act is to be done in the life-time of the grantor or after his death. 1 R. S. 732, § 74. There is not to be found in that statute any restriction respecting the time within which a power must be executed, although it does provide a limitation of the period during which the absolute right of alienation may be suspended by *an instrument in execution of a power*. 1 R. S. 737, § 128. A power of sale is not an estate or interest in lands. The provisions of the statute on this subject are explicit. It requires an absolute power of disposition, and defines such a power to be one by means of which the grantee is enabled in his life-time to dispose of the entire fee for his own benefit. In such a case the grantee takes a fee subject to any future estate limited thereon, but absolute in respect to creditors and purchasers. 1 R. S. 732–733, §§ 82–85. Even a devise of real estate itself to an executor to sell, without an authority to receive the rents and profits, vests no estate in him. 1 R. S. 729, § 56 ; *Germond* v. *Jones*, 2 Hill, 573 ; *Downing* v. *Marshall*, 23 N. Y. 366. An instrument in execution of a power is not regarded as an alienation by the grantee, but as the act of the grantor. Before execution the power is a lien or charge upon the lands (1 R. S. 735, § 107), and has no greater effect upon the interests of heirs or devisees than a mortgage made by the testator, payable at the time fixed for the execution of the power, would have had. No one would question the validity of a mortgage given by a testator to secure the payment of a sum of money twenty years after his death, because it contained the usual power of sale. No doubt such a power in either case obstructs the sale or other disposition of lands by the owner, but not by reason of the time limited for the exercise of the power. It would ordinarily have the same effect if no restriction as to time were imposed. But the absolute right of

alienation of the fee is not affected thereby. In the case before us, the residuary devisees took an estate in fee, which, notwithstanding the incumbrance of the power, is neither defeasible nor conditional, and they may alienate it at pleasure. A conveyance from them and the devisees of the term would pass the whole estate. The testator might have made the devise to the residuary devisees in a form which would have given them an estate lasting only until the execution of the power, as there will be a short interval between the end of the term given to the widow and minor children, and the time within which the power must be executed.

There being more than two residuary devisees, such a devise would have been illegal. The practical result of a devise of the fee incumbered by a power may in some cases be the same. Nevertheless the latter is legal. The statute does not aim to do any thing more than to prevent the inalienability of estates beyond the prescribed limit. It has not sought to limit the duration of a lien or incumbrance thereon. The only provisions on this subject are the 14th and 15th sections of the statute relating to the creation and division of estates (1 R. S. 723). The 14th section avoids *future estates* which suspend the power of alienation. It is manifest that this section does not embrace the power in this case, because that does not create a future or any other estate. The 15th section avoids *limitations* and *conditions* only. "Conditions" and "limitations" are terms well understood in law. A power is neither the one nor the other. And as before intimated, the residuary devisees in this case, who are the beneficiaries under the power, may at once alienate all the estate they got under the will. They can alienate the fee in the lands subject to the power, and they may sell their respective shares in the proceeds of the sale which shall be made in execution of the power. The statute on this subject expressly provides that limitations of future or contingent interests in personal property shall be subject to the rules prescribed in relation to future estates in lands, and those rules authorize the alienation of expectant estates. 1 R. S. 773, § 2; id. 722, § 9; id. 725, § 35; *Lawrence* v. *Bayard*, 7 Paige, 70; *Sheridan* v. *House*, 4 Keyes, 569. How, then, and of what is there a suspension of the power of alienation?

We are not aware of any adjudication in conflict with the views on this subject which we have now expressed. In *Beekman* v. *Bonsor*, 23 N. Y. 298, 317, COMSTOCK, J., remarked, that the power

in trust in that case would have been a lawful one if the postponement of its execution for an absolute period or time did not suspend the power of alienation in a manner which the statute did not permit. This, however, was *obiter dictum*, and is hardly reconcileable with the decision of the same judge in *Downing* v. *Marshall, supra,* for in the latter case a power in trust, the execution of which was postponed until after two lives in being, was upheld.

Whether we regard the power of sale, therefore, as intended to effect an out and out conversion of the realty in personalty, or as a power in trust of real estate, it is in our opinion valid.

There can be no question as to the validity of the direction contained in the power respecting the disposition of the proceeds of the sale. *Crittenden* v. *Fairchild,* 41 N. Y. 289 ; *Kinnier* v. *Rogers,* 42 id. 531; *Kane* v. *Gott,* 24 Wend. 641.

We have assumed that the birth of the posthumous child was not under circumstances to work a revocation of the will according to the provision of the Revised Statutes on that subject. 2 R. S. 64, § 43.

For the reasons stated the judgment must be affirmed.

*Judgment affirmed.*