NATHAN H. PENDERGAST, as Executor of the Last Will and Testament of MARY ETTA CUTTER, Deceased, Plaintiff, *v.* JOHN S. CUTTER et al., Defendants.

(Supreme Court, Queens County, October, 1921.)

Wills — construction of — devise — payment of lump sum to life tenant — accumulation of income on balance of fund to make good depletion of corpus.

   The will of C. contained the following provision: " I give to my nephew * * * the use of my * * * farm and after his decease I bequeath and devise same to his children or their heirs or assigns forever." The farm was sold by order of the court, the value of the life estate paid to the life tenant and the balance deposited with the city chamberlain. At the time of the sale the life tenant had a wife and four adult children. Periodically the accumulated income on the fund deposited with the chamberlain was paid to the four children by order of the court. One of the children dying intestate her executor brings this action claiming that under the will of C. the four children took vested remainders and that the

deceased daughter's share in the income of the fund on deposit should be paid to her executor. *Held,* that irrespective of the vesting or non-vesting of the various interests under the will of C. the income on the fund on deposit with the chamberlain must be left with the fund to accumulate during the life of the life tenant so that the depletion of the corpus by the payment of the lump sum to the life tenant may be made good.

ACTION for the construction of a will.

Albert W. Meisel, for plaintiff.

Clarence J. Shearn, in person.

R. W. Kellogg, special guardian.

Frederick J. Moses, special guardian.

VAN SICLEN, J. Bloodgood Cutter died leaving a will containing the following provision: '' I give to my nephew, John Cutter, the use of my Little Neck farm, and after his decease I bequeath and devise same to his children or their heirs or assigns forever.''

In 1909, while the life tenant, John Cutter, was in possession of the farm, the Supreme Court authorized the sale of the farm and the fixing of the value of John Cutter's life estate. This was computed at about $68,000 and paid to him, the balance being deposited with the city chamberlain. At this time John Cutter had a wife and four adult children living. Since then, periodically, *ex parte* orders have been applied for and granted directing the payment of the accumulated income on the fund so deposited with the city chamberlain to the aforesaid four adult children of John Cutter. Recently one of the four children died leaving a will bequeathing all her estate to four nephews and nieces. The city chamberlain now refuses to honor any further *ex parte* orders for the payment of this

income and has refused to make any payment of same to the estate of said deceased child. Her executor has brought this action seeking to have it determined that the devise of Bloodgood Cutter to the remaindermen was a vested estate which could be bequeathed by this deceased daughter and directing the payment of his decedent's share in the income to him.

The several guardians' contention is that while the various estates in remainder may be vested they are contingent upon the condition prevailing at the time of the death of the life tenant; that there may be after-born children of the life tenant; he is now seventy-eight years old and while his wife is living he has lived apart from her for twenty years; and that the estates of the present apparent remaindermen are dependent upon their surviving the life tenant.

Much has been written about the vesting of estates in remainder and any attempt to resolve this case on that ground seems to lead to greater difficulties when the various decisions are carefully examined. *Moore* v. *Littel,* 41 N. Y. 66, 76; *Jackson* v. *Littel,* 56 id. 108, 111; *Byrnes* v. *Stilwell,* 103 id. 453; *Manhattan Real Est. Assn.* v. *Cudlipp,* 80 App. Div. 532; *Clowe* v. *Seavey,* 208 N. Y. 496, 502; *Sheridan* v. *House,* 4 Keyes, 569; Real Prop. Law, §§ 35, 36, 37, 40, 59. And the more recent cases of *Mersereau* v. *Katz,* 197 App. Div. 895; *Hunt* v. *Wickham,* Id. 800.

In the latter case, the devise was quite similar to the one in the case at bar and the court held that " Hence such [children] as die before the life tenant's death have no descendible or devisable interest." There was also a strong dissenting opinion in this latter case. The words of the devise over in the case at bar are " to his children or their heirs or assigns forever," thereby disclosing an intention on the part of the testator to include therein the heirs of such children of

the life tenant as might not survive him (the life tenant). At any rate it can be stated with reasonable certainty that if the children of John Cutter took a vested interest, such interest was contingent and liable to open and let in afterborn children of the life tenant. It may also be liable in respect of any child to be wholly defeated by the death of such child before that of the life tenant, although the weight of authority and the particular wording of this devise seem to preclude such a possibility. See authorities first cited.

There appears, however, a more forceful reason for the determination of this case than that attendant upon the determination of the vesting or non-vesting of the various interests, and that arises from the clearly evident fact, that in fixing a lump sum for the value of a life estate the remainder is depleted to such an extent that the income which will accumulate during the period that the life tenant is expected to live according to the mortality table must be left with and added to the deposited remainder in order to make good said depletion. In other words, if the life tenant lives just as long as the table " expects " him to and the deposited fund is allowed to accumulate it will have increased to the original amount by the time the life tenant dies. If the income that is accruing on the so-called " remainder fund " is distributed from time to time before the death of the life tenant and the ascertainment of the actual remaindermen it is obvious and beyond dispute that there will be only a depleted remainder to distribute and if the actual remaindermen are in any wise different from those who appear to be the remaindermen from time to time in the interim then such of those actual remaindermen as are not now apparent remaindermen will be deprived of a portion of the inheritance which the testator intended them to have. Of course, if the life tenant does not

live his " expected " number of years then the remaindermen whoever they may happen to be are sure to lose by reason of the paying of a lump sum to the life tenant. This, however, has been done and the same was done with some apparent warrant of law and cannot now be undone. Such procedure could lead to gross injustice and has the sanction of no equitable principle. The amount awarded to the life tenant for his life estate exceeded one-third of the entire corpus of the estate devised, although he was then sixty-six years of age and if he had died shortly after the payment of the same to him, the eventual remaindermen would plainly have received but two-thirds of the amount the testator intended them to have. Furthermore, if the testator had any thought of making it impossible for the life tenant to get a single legacy at one time which he could squander or fritter away, such purpose would thereby have been completely thwarted. In the circumstances, therefore, it is all the more desirable that the court at this time decrease so far as possible the probable waste and further diminution of the corpus of the remainder. As it is now the income that has already been distributed can only be made up by the possible survival of the life tenant beyond his " expected " term.

It might seem from a casual reading of section 63 of the Real Property Law, although the same has not been urged by any of the parties herein, that its provision offered a solution of this controversy. But the accumulations that are now being made on this fund cannot be included within the terms of that section. They are not " undisposed of profits or rents." All the rents and profits contemplated by this devise have already gone to the life tenant and the income on the fund must be left with it to accumulate so that the depletion of the corpus may be made good.

It is upon this latter ground rather than upon the vesting or non-vesting of the remainder interests that the court is constrained to find against the plaintiff. The complaint will be dismissed but without costs.

Complaint dismissed.