AMANDA M. HOUSE, Respondent, v. PATRICK McCORMICK, Appellant.

Where a deed contains express covenants of warranty or quiet enjoyment, it operates as an estoppel against a claim of the grantor or his privies to a subsequently acquired estate, as well where the grantor had a present right or interest, which passed at the time of the grant, as when nothing whatever passed.

Certain premises were deeded to J. during his life, and after his decease to his heirs and assigns forever. J. had eleven children, to whom he conveyed his life estate; they divided the premises; all of the others united in a deed to R., one of the children, of the portion allotted to him, the deed recited the intent to be that the grantee should hold his

Statement of case.

portion in severalty, free and discharged from all claim, liability, interest or estate of the others, and contained a covenant of quiet enjoyment as against the grantees and all persons lawfully claiming, or to claim, under them, etc. R.'s interest was sold upon execution and conveyed by sheriff's deed, under which plaintiff claimed. F., one of the children, died during the life of J., leaving a child. After the death of J., under a judgment in partition, the land so deeded to R. was set off to P., another of the children. *Held*, that by the deed to R. he acquired an absolute title, upon the death of J., to ten-elevenths of the premises (the title to one eleventh thereof having been divested by the death of F.), and under the covenant in said deed the subsequently acquired title of P. to the other one-eleventh, inured by way of estoppel to the benefit of plaintiff, the grantee of R.'s title; and that she was entitled to the possession of the whole as against a grantee of P.

(Argued January 10, 1874; decided May term, 1874.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, affirming a judgment in favor of plaintiff entered on the decision of the court upon trial without a jury.

The action was ejectment for a lot of land in Brooklyn. The plaintiff recovered the whole lot. The defendant claims on this appeal that he should have recovered ten-elevenths only. The lot in question is part of a farm which formerly belonged to Samuel Jackson, generally known as the hay-scale farm. In 1832 he conveyed it to John Jackson "for and during his natural life, and after his decease to his heirs and their assigns, forever." In 1848, John Jackson conveyed his life estate to his eleven children, and in 1850 they executed to each other partition deeds, dated 13th February, 1849, of the greater portion of the farm. Those deeds recited at length the terms of the conveyance from Samuel Jackson, the conveyance of the life estate and the names of the children of John Jackson, then surviving; that the said children had caused the premises to be subdivided into lots and a map thereof to be made, and that they had covenanted and agreed among themselves, and each for himself and herself, to divide the said premises, according to the sub-divisions on said map, among the several persons entitled, and to make suitable and necessary convey-

ances thereof so that each tenant in common should hold his or her share or parcel thereof in severalty, free, and discharged from all claim, liability, interest and estate of any other tenant in common in said premises or any part thereof, and had made such partition pursuant to such agreement; and the deed to Richard Jackson from the other children stated that they, in consideration of the premises and ten dollars to them in hand paid by him "and for the purpose of carrying out and effecting the partition of said premises made by the several tenants in common as aforesaid so that each tenant in common may have and hold his or her share thereof, in severalty" granted and conveyed certain specific lands, including the premises to the said Richard Jackson, his heirs and assigns, forever. The grantors then, as parties of the first part, for themselves and their heirs, separately and not jointly covenanted, granted, promised and agreed to and with the said Richard Jackson, as party of the second part, his heirs and assigns, in the following terms: "That the said premises hereby conveyed are free and clear of and from all charges and incumbrances of any name or kind whatsoever by them, or either of them, made or suffered; and that the said party of the second part, his heirs and assigns, shall and may from time to time, and at all times hereafter, well and peaceably have, hold, possess and enjoy the lands and premises hereinbefore assigned and conveyed free, clear and discharged of and from all estates, rights, titles, interests, charges and incumbrances whatsoever had, made, caused or suffered to be made of or by the said parties of the first part, or either of them, or any person claiming or to claim the same by, from, or under them or either of them, and without any let, suit, trouble, entry, disturbance or interruption of the said parties of the first part, or either of them, or of their heirs or assigns, or of any person or persons lawfully claiming or to claim the same by, from, or under them or any or either of them." Richard Jackson executed a like deed to each of his brothers and sisters then living, of the several parcels of land that had been allotted to them, in severalty.

After that partition and on the 21st day of November, 1855, William Beard recovered a judgment in the Supreme Court for $840.75, against the said Richard Jackson, which was docketed in Kings county, on the 25th day of July, 1856, and on the 9th day of September, 1856, the sheriff of that county, under and by virtue of an execution issued to him on that judgment, sold to Daniel P. Barnard all the right, title and interest of the said Richard Jackson, of which he was seized or possessed on the said 25th day of July, 1856, or at any time thereafter, up to the day of the sale in and to fifty-two lots of land, formerly part of those included in the deed, to the said Richard Jackson above referred to, including the lot in question; and he, on the 4th day of December, 1859, executed and delivered to the said Barnard a deed for all of the said lots so sold to him. Barnard, on the 27th day of August, 1862, executed and delivered to the plaintiff, Amanda M. House, a deed of bargain and sale of the lot in question, and of three other lots purchased by him at the said sheriff's sale.

Subsequent to the execution of the said partition deed to Richard Jackson, Fanny Jackson, his sister, and one of the grantors therein, was married to Parker Baldwin. On the 3d day of June, 1859, while her father was still living, she died, leaving one child, Fanning Baldwin, her only heir at law, her surviving. He was born February 21, 1859, and is still living.

John Jackson died on the 5th day of March, 1861, leaving his children, who were parties to the said partition deed (except the said Fanny Baldwin), and his grandson, the said Fanning Baldwin, his only heirs at law, him surviving. After his death, and on the 15th day of January, 1862, Stephen C. Jackson and others, commenced an action against Coe H. Jackson and others (the parties thereto being the heirs of the said John Jackson, and those only), for a partition of the said hay-scale farm, so conveyed to him by the deed from Samuel Jackson, as above stated, and on the 7th day of September, 1863, judgment was entered therein by which certain lots (not including that for which this action is brought) were set off to the said Fanning Baldwin in severalty, and the lot in

question was set off to Parmenus Jackson, one of the grantors in the said deed to Richard Jackson, in severalty, and he subsequently and before the commencement of this action conveyed the same to Patrick McCormick, the defendant herein, who, since that time, occupied it and claimed that the said sheriff's deed conveyed an estate in said land only for the life of John Jackson.

The judge, who tried the issues, found on the facts above set forth, the following as his conclusions of law :

*First.* That the deed from the sheriff of Kings county conveyed to Barnard the right, title and interest of Richard Jackson in the remainder in fee, limited to the heirs of John Jackson, in all the lots mentioned in said deed.

*Second.* That as to one-eleventh thereof, such remainder was divested by the death of Fanny Baldwin before her father.

*Third.* That when Parmenus Jackson subsequently acquired title as aforesaid to such one-eleventh, it became vested in the plaintiff by virtue of the covenants in the partition deed annexed to his findings, and by the sheriff's deed also annexed, and that Parmenus Jackson and his grantee are estopped to deny the plaintiff's title to such one-eleventh.

*Fourth.* That the plaintiff is entitled to judgment against the defendant for the whole of the lot mentioned in the complaint.

Exceptions were duly taken to the first, third and fourth of said conclusions.

*Everett P. Wheeler* for the appellant. A sheriff can only sell that of which he can take and deliver possession, and which can be seen and determined. (*Jackson* v. *Town*, 4 Cow., 599, 603.) He cannot sell choses in action. (*Denton* v. *Livingston*, 2 J. R., 96; *Bogert* v. *Perry*, 17 id., 350; *Scott* v. *Scholey*, 8 East, 467.) Nor any equitable estate. (*Brewster* v. *Striker*, 2 N. Y., 19.) Covenants are confined to the very title or interest which the deed purports to convey, and never estop the grantor as to any other title or

interest subsequently acquired. (*Miller* v. *Ewing*, 6 Cush., 34, 40; *Doane* v. *Willcutt*, 5 Gray, 328; *Jackson* v. *Stevens*, 16 J. R., 110; *Pelletreau* v. *Jackson*, 11 Wend., 110, 118, and cases cited; *Brewster* v. *Striker*, 2 N. Y., 19; *Sinclair* v. *Jackson*, 8 Cow., 543, 586; *Jackson* v. *Hoffman*, 9 id., 271; *Wheelock* v. *Henshaw*, 19 Pick., 341; *Hermitage* v. *Tompkins*, 1 Ld. Raym., 729.) If any interest, however small, passes by a deed, it creates no estoppel. (4 Kent's Com., 98; 4 Cruise Dig., 270, § 58; Co. Litt., 476; *Jackson* v. *Hoffman*, 9 Cow., 271; *Lewis* v. *Baird*, 3 McL., 56, 78; 2 Preston on Abstracts, 212, 216; 3 Washb. R. E. [3d ed.], 105, 106; *Doe* v. *Earl of Scarborough*, 2 Ad. & El., 2, 9, 10, 12, 38; *Jackson* v. *Hubble*, 1 Cow., 613; *Jackson* v. *Waldron*, 13 Wend., 178, 207; *Tanner* v. *Livingston*, 12 id., 83; *Doe* v. *Seaton*, 2 C., M. & R., 728; *Hill* v. *Saunders*, 2 Bing., 112; affirmed, 4 B. & C., 529.)

*D. P. Barnard* for the respondent. The title adjudged to Parmenus Jackson in the partition action inures to the benefit of any one claiming the estate by or through him. (*Wood* v. *Seely*, 32 N. Y., 116.) The purchasers under the judgment sale took the full benefit and all the right of Richard Jackson to the covenant of warranty, and all equities and estoppels running with the land. (*Rickert* v. *Snyder*, 9 Wend., 421; *Allen* v. *Culver*, 3 Den., 295; *Sweet* v. *Green*, 1 Paige, 473; *Kellogg* v. *Wood*, 4 id., 578.)

Lott, Ch. C. It is settled by the decisions of the Court of Appeals, that Richard Jackson, as one of the heirs of John Jackson, his father, and by virtue of the grants in the partition deed executed to him by his brothers and his sisters, who survived the said John Jackson, acquired on his decease a perfect title to ten-elevenths of the lots and premises included in that deed, irrespective of the covenants contained therein; that the estate or interest of Fanny Baldwin, a sister, who was also a grantor therein, although vested, was determinable by her death before her father; that, by the occurrence of that

event, it became divested, and that Fanning Baldwin, her son, as one of the heirs at law of the said John Jackson, on his death, became entitled, under the deed of Samuel Jackson, to one-eleventh of said lots and premises. (See *Sheridan* v. *House*, 4 Keyes, 569; *Moore* v. *Littel*, 41 N. Y., 66; *House* v. *Jackson*, 50 id., 161; *Jackson* v. *Sheridan*, id., 660; *Powers* v. *Wheeler*, id., 660.)

It is also settled by the decision in *Sheridan* v. *House* (*supra*), that Mrs. House, the plaintiff in the present action (and who was the defendant in that), is entitled to ten-elevenths of the premises in question in this action, under and by virtue of the deed from the sheriff, of the interest of Richard Jackson, on the sale under the execution on the judgment docketed against him, on the 25th of July, 1856. That decision was placed on the ground that he, as one of the heirs at law of the said John Jackson, and by virtue of the grants by his brothers and sisters (except by Mrs. Baldwin), to him above referred to, had a vested estate to that extent at the time of the sheriff's sale, on the 9th day of September, 1856, and that such interest had become vested in her by a conveyance from the sheriff's grantee. It is stated by Judge WOODRUFF (who delivered the prevailing opinion in that case), in speaking of the partition deed, with reference to its effect, that he should not consider "whether it operated as an estoppel, so as to assure to Richard Jackson the fee, when in fact the grantors did survive John Jackson, and thus assured to her the title which they had proposed to convey," but that he preferred to rest his "conclusions upon the answer which should be given to the question, whether the children of John Jackson had, before his decease, an alienable interest or estate in the premises, and, by this, to test the effect of the partition deed and the validity of the defendant's title." He then proceeded to consider that question, and reached the conclusion that the defendant was entitled to ten-elevenths of the premises, being all the interest therein which was claimed by her in that action. All of the judges (except Judge GROVER, dissenting) concurred in the views of Judge WOODRUFF, and,

the questions involved having been submitted in a case made under the Code, judgment was ordered in accordance with his conclusion.

In the case under review, judgment was ordered for the entire estate, on the ground, as stated by the judge in his third conclusion of law, that when Parmenus Jackson, under the judgment in the partition suit, acquired title to the one-eleventh of the premises described in the deed to Richard Jackson, which had become divested by the death of Fanny Baldwin, it became vested in the plaintiff by virtue of the covenants in the partition deed, and by the sheriff's deed under which she held title, and that Parmenus Jackson and his grantee are estopped from denying the plaintiff's title to such one-eleventh. This was right. It evidently was the object and intention of the parties to that partition deed to vest in the different grantees in severalty, the title to the lots and premises conveyed to them, free and discharged from all right, claim and demand which the grantors then had, and which they might thereafter acquire or be entitled to on the death of John Jackson. The parties knew, or are presumed to have known, that the several estates of each of them in remainder, whether vested or contingent, were determinable by his or her death in the lifetime of their father, or might be partially defeated by the birth of afterborn children, who might be his heirs at the termination of his life estate, and consequently be entitled to a portion of the property partitioned; and they intended, so far as they could, to protect each other against such contingencies. Either event would or might affect the partition. They, therefore, made a division or partition not only of their interest and estate during the life of their father, acquired from him, but of those in remainder under and by virtue of the deed from Samuel Jackson, allotting and conveying, to each certain specific and designated portions of the property to be divided, and they, for the purpose of preventing a claim by any or either of them in the land allotted, set apart and conveyed to the other or others of them, after entering into covenants against incumbrances created or suffered by them

respectively at that time, further separately for themselves and their respective heirs, covenanted with each grantee, his heirs and assigns, that he and they should and might at all times thereafter, peaceably hold and enjoy the same without any let, suit, trouble, entry, disturbance or interruption of or by the grantors, or either of them, or of their heirs or assigns, or of any person or persons lawfully claiming or to claim the same by, from or under them, or any or either of them. This covenant is so full and comprehensive as to preclude all and every claim by either of the grantors that might or could at any time interfere with, or in any manner prevent the full and uninterrupted possession and enjoyment by the several grantees respectively of an absolute and entire estate in severalty in the premises described in their respective deeds, and every part thereof. The entire estate was intended to be vested and secured. The intention to accomplish and effect that result, is indicated by a recital in the partition deed of the terms of the deed from Samuel Jackson to John Jackson, the conveyances by John Jackson of his interest to his children living at the time they were executed, the agreement of the parties to the partition deed to divide the property between them, according to a subdivision thereof, into lots, as represented on a map made, and intended to be filed in the office of the clerk of Kings county, and to execute the necessary conveyances thereof, so that each party should hold his or her share or parcel thereof in severalty, free and discharged from all claim and liability, interest and estate of any other of the parties, and by the declaration, after such recitals, that the said deed was executed for the purpose of carrying out and effecting the partition of the premises among the parties, so that each might so hold his or her share thereof in severalty. Those recitals and declarations, and the said deed clearly show that all of the parties thereto, fully understood and intended that none of them should at any time thereafter, claim as against any other or others of them, any claim or demand, under or by virtue of any right or interest then held, or that might be

acquired under or by virtue of the said deed from Samuel Jackson to John Jackson. The conveyances mutually executed by and between them were a good and sufficient consideration for their respective covenants, and being, therefore, valid and operative, it would have been incompetent for Parmenus Jackson to have taken and held possession of the lots, sought to be recovered in this action, as against and in hostility to Richard Jackson. This would have been a violation and a breach of his special and full covenant of quiet enjoyment, above set forth, and he would have been estopped, under the well settled rule of law, that a title subsequently acquired by a party who has granted land with covenant of warranty inures to the benefit of his grantee, from setting up his title to justify such possession, and to prevent the occupancy and enjoyment thereof by Richard ; and his grantee, the defendant, has no greater or better right. There is no ground for the claim of the appellant, that the partition deeds " only profess to convey, in partition, the vested interest of the parties." The conveyances are absolute, and make no limitation of the grant to any particular estate or interest, but the entire estate is absolutely granted in fee simple. Such was the object and intention of the grant, and the covenant of quiet enjoyment was intended to effectuate that intention, and to prevent any claim in hostility thereto, or in contravention thereof, as has already been shown. It may, therefore, be conceded, as is also claimed on behalf of the appellant, that " covenants are always confined in their interpretation and scope to the very title and interest which the deed purports to convey, and never estop the grantor as to any other title or interest subsequently acquired," or, in other words, that they are restricted and limited in their operation to the *quantum* of interest intended to be granted. In this case, the grant was absolute and of the entire estate, and, therefore, the views above expressed are in accordance with that principle.

It is further claimed, on behalf of the appellant, that there is no estoppel created by the deed of Parmenus Jackson, because another exception, well recognized in the doctrine of estoppel, is

thus stated by Chancellor Kent (4 Cowen, 98): "If the lease takes effect by passing an interest, it cannot operate by way of estoppel, even though it cannot operate by way of interest to the full extent of the intention of the parties. If any interest, however small, passes by a deed, it creates no estoppel." This claim is untenable. Although the last remark in the statement apparently applies to a deed as well as lease, it is evident, from the connection in which it is used, that it was intended to apply to a lease only. It is, therefore, unnecessary, now, to call it in question. It is to be construed as having application to leasehold interests only; and it is said by Mr. Williams in his treatise on real property (p. 378), that "the circumstance that a lease for years was, anciently, nothing more than a mere contract, explains a curious point of law relating to the nature of leases for years, which does not hold with respect to the creation of a greater interest in land. If a man should, by indenture, lease lands, in which he has no legal interest, for a term of years, both lessor and lessee will be *estopped*, during the term, or forbidden to deny the validity of the lease. This might have been expected. But the law goes further, and holds that if the lessor should at any time during the lease acquire the lands he has so let, the lease, which before operated only by estoppel, shall now take effect out of the newly acquired estate of the lessor, and shall become, for all purposes, a regular estate for a term of years. If, however, the lessor, has at the time of making the lease, any interest in the land he lets, such interest only will pass, and the lease will have no further effect by way of estoppel, though the interest purported to be granted be really greater than the lessor had at the time of the grant  *  *  *  but if in such case, the lease was made for valuable consideration, equity would oblige the lessor to make it good out of the interest he has acquired." (See, also, notes to *Walton* v. *Waterhouse*, 2 Saund., 415 [by Williams, ed. of 1846].)

It may, also, be conceded that there will not be an estoppel so as to give a grantee the benefit of a subsequently

acquired estate, where any interest passes under a deed of bargain and sale, or quitclaim, or, by any conveyance containing no covenants; but the rule or exception claimed does not apply where the deed by which the. premises conveyed contains express covenants of warranty or quiet enjoyment. The question in such cases, as in all other cases arising out of the construction of deeds, is one of intention; and where it appears to have been the object of the covenant to assure to the grantee, or covenantee, the full and absolute enjoyment of the property, without any right of the grantor to divest or interfere with the possession at any time thereafter, there is no reason or principle why it should not operate as an estoppel to avoid circuity of action against a claim of the grantor to a subsequently acquired estate, where a present right or interest, in fact, passed at the time the grant was made as well as when nothing whatever passed.

It is proper to notice a further point of the appellant's counsel. It is said that there can be no question whatever, that Fanning Baldwin could, after the death of his grandfather, John Jackson, have asserted and maintained title in himself, against the plaintiff, to the one-eleventh of the premises that had been acquired by her through the sheriff's sale on the execution against Richard Jackson, on the ground that such one-eleventh, by the death of Fanny Baldwin, in the lifetime of her father, became vested, on his death, in Fanning Baldwin, and it is claimed that it, with other property, was transferred from Fanning Baldwin to Parmenus Jackson, by the judicial proceedings in partition, and that he afterward conveyed it to the defendant. This is an erroneous construction of the effect of those proceedings. It is true that Fanning Baldwin, on the death of John Jackson, became entitled to the eleventh of the lands and premises that had been conveyed to Richard Jackson by the partition deed, and it may be assumed that he could have maintained an action of ejectment therefor, but the operation of the judgment in partition, was to divest him of all claim and demand in and right to the lands and premises so conveyed,

except the particular and specific portions thereof, which were allotted and set off to him, in severalty, by the said judgment, and it is found by the judge who tried the issues in this action, that none of the lots mentioned in the complaint were included in such allotment, but that they were all allotted and set apart to the said Parmenus Jackson, which allotment to Parmenus inured, by way of estoppel, to Richard Jackson, as before shown. Such an estoppel runs in favor of and against the privies in estate of the immediate parties to it, as well as for and against the parties personally; and the plaintiff, by its operation was, as properly adjudged by the court below, enti-tled to the said eleventh, to which it applied, as well as the other ten-elevenths of the premises in question. (See *Sweet* v. *Green,* 1 Paige, 473; *Kellogg* v. *Wood,* 4 id., 578; *Wood* v. *Seely,* 32 N. Y., 116.)

It follows that the judgment appealed from should be affirmed, with costs.

All concur.

Judgment affirmed.