[2] Black on Judgments, referring to persons bound as privies to parties bound by judgments, says:

"In the second place, privies, in such sense that they are bound by the judgment, are those who acquired interest in the subject-matter after the rendition of the judgment."

Plaintiff is not concluded by the judgment pleaded, and the judgment appealed from is affirmed, with costs. All concur.

---

COLLINS v. BUFFALO, L. & R. RY. CO. et al.

(Supreme Court, Appellate Division, Fourth Department.   May 3, 1911.)

1. RAILROADS (§ 68*)—RIGHT OF WAY—DEED—CONSTRUCTION—PROPERTY CON-
   VEYED.
      Provision in a deed of a right of way that the grantee takes only such right as it might have obtained by condemnation proceedings does not save it from covering, and its covenants applying to, land within the description, title to which is not in the grantor.
      [Ed. Note.—For other cases, see Railroads, Dec. Dig. § 68.*]

2. ESTOPPEL (§ 38*)—BY DEED—AFTER-ACQUIRED TITLE.
      Where a grantor, after making a warranty deed of land, not having title, purchases the outstanding title, it immediately inures to the benefit of his grantee, though he takes title in the name of another.
      [Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 99–107; Dec. Dig. § 38.*]

3. CHAMPERTY AND MAINTENANCE (§ 7*)—DEED OF LAND HELD ADVERSELY.
      Under the law of champerty, as contained in Real Property Law (Laws 1909, c. 52 [Consol. Laws 1909, c. 50]) § 260, a deed is void where at the time of its delivery another than the grantee is in actual possession of the land claiming under a title adverse to that of the grantor; and this, though the grantor's title was good.
      [Ed. Note.—For other cases, see Champerty and Maintenance, Cent. Dig. §§ 54–100; Dec. Dig. § 7.*]
      Spring and Robson, JJ., dissenting.

Appeal from Trial Term, Niagara County.

Action by May Collins against the Buffalo, Lockport & Rochester Railway Company, impleaded with others. From a judgment for plaintiff, defendant company appeals. Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Frank F. Williams, for appellant.

George F. Thompson, for respondent.

KRUSE, J. The controversy is over a small piece of land, consisting of about an eighth of an acre, situate in the town of Royalton, Niagara county, and lying between the New York Central & Hudson River Railroad and the highway, immediately north thereof. The plaintiff claims to own the same, and the action is brought to restrain the appellant railroad company from entering upon said land, and,

in general, from building and operating its electric railroad over and across the same.

The railroad company contends that the land in question was conveyed to it, and that the plaintiff acquired her title subsequently and under such circumstances as to inure to its benefit; and, further, that it had such possession of the premises at the time of the execution and delivery of her conveyance that it is void for champerty. The railroad company's tracks extend in a northeasterly direction, crossing the other railroad and highway referred to at nearly right angles. The defendant Edgar Knapp owns the farm immediately north of the highway. The farm south of the highway, over which the railroad company's tracks are built, may be called the Knapp heirs' farm. On the 27th day of June, 1906, two conveyances were made to the railroad company, one by the defendant, Edgar Knapp, of the right of way across his farm and the other by Mary Knapp, the widow of Silas Knapp, deceased, and his heirs at law, of the right of way south of the highway, across the Knapp heirs' farm. The defendant Edgar Knapp is one of the heirs at law of Silas Knapp and joined in the conveyance of the right of way across the Knapp heirs' farm, and bound himself by the covenants therein contained. That conveyance contains covenants of seisin, quiet enjoyment, freedom from incumbrances, further assurance, and warranty of title. The conveyance of the right of way north of the highway is not involved in this controversy, and need not be referred to again.

While the Knapp heirs did not have the title to the small triangular piece of land in dispute, I think it is clearly included in their conveyance to the railroad company. The northern boundary of the lands as therein described extends to the boundary line between lands of the first parties named in the conveyance (the Knapp heirs) and lands now or formerly owned by Edgar Knapp, and is further located as being the boundary line between lots 1 and 2, section 12, and also the center of the highway, and includes a strip of land extending from the north bounds southerly across the farm, except such as is owned and occupied by the New York Central & Hudson River Railroad Company for its right of way. The lands are further located by a map, which is attached to and made a part of the deed of conveyance. The description, as supplemented by the map, certainly includes all the right of way lands lying between the highway and the New York Central & Hudson River Railroad.

[1] The plaintiff's counsel contends, as I understand his position, that because the deed from the Knapp heirs contains the provision that the grantee takes only such right as it might have obtained by condemnation proceedings, and the Knapp heirs did not have the legal title to this triangular piece of land, that it is not covered by the conveyance, and that the covenants contained in the conveyance do not apply thereto. I think that no such interpretation or effect can be given to this provision, and that we should hold not only that the lands in dispute are intended to be conveyed by the deed of conveyance, but as well that the covenants contained therein apply thereto.

[2] It appears that at the time of the conveyance by the Knapp heirs the title to this triangular piece of land was in one Charlotte Ful-

ler. Edgar Knapp and his attorney set about thereafter to acquire the title. It is unnecessary to refer in detail to the various interviews had between Knapp, his attorney and the representatives of the railroad company, or to the various transactions which led up to acquiring the title. It is sufficient to say that the railroad company finally insisted that its title should be made good, and the title was acquired by Edgar Knapp, and is now nominally held by the plaintiff, Knapp's adopted daughter. On the 12th day of March, 1907, Charlotte Fuller conveyed to David C. Colbert, by quitclaim deed, the lands in controversy. On the same day the latter made a conveyance in which the name of the plaintiff finally appeared as grantee. The consideration of $100 for the conveyance was paid by Edgar Knapp by a check of a firm of which he was a member.

The railroad company contends that originally Knapp's name was inserted in the deed as grantee. However that may be, it clearly appears that, after the delivery of the deed, his or another name was erased and the plaintiff's name substituted as grantee. It is claimed, however, on behalf of the plaintiff, that whatever name was originally inserted in the deed as the grantee therein was erased with the consent of the grantor, and the deed was delivered with that understanding.

I think it is not important, or at least not controlling in the disposition of this case, whether Knapp's name was originally in the deed as grantee or not. All of the negotiations for acquiring the title were had between Knapp and his attorney and the parties from whom the same was acquired. The plaintiff had nothing to do with the negotiations, paid nothing for the title, was not even present when the deed was delivered, and knew nothing about the deed until afterward, and after her name had been inserted in the conveyance as grantee. Knapp then told her that she owned a piece of land, and that was about all he said to her, as he himself testifies. He never demanded or received anything from her in return for the property, and at the time of the execution and delivery of the deed the railroad company was in possession of the land. Knapp could not acquire and hold the outstanding title as against the railroad company. Such acquisition by him would immediately inure to the benefit of his grantee (House v. McCormick, 57 N. Y. 310; Thompson et al. v. Simpson et al., 128 N. Y. 270, 286, 28 N. E. 627); and I think that is so whether the outstanding title was taken in his own name or that of another, as was done in this case.

[3] Even if the outstanding title did not inure to the benefit of the railroad company, and the plaintiff could hold the same in hostility to the railroad company's full covenant deed, I think the conveyance to her would be void for champerty. A grant of real property is absolutely void if at the time of the delivery of the deed such property is in the actual possession of a person claiming under a title adverse to that of the grantor. That general principle has been embodied in our statute laws for many years (Hopkins v. Baker, 140 App. Div. 460, 125 N. Y. Supp. 417), and is now contained in the present Real Property Law (Laws 1909, c. 52 [Consol. Laws 1909, c. 50]) § 260. At the time of the execution and delivery of the deed under which the plaintiff claims, the railroad company was in possession of the land, claiming under a title adverse to that of the plaintiff's grantor. The

fact that the title was in the grantor, and not in the railroad company, does not take the conveyance out of the condemnation of the statute. Sands v. Hughes, 53 N. Y. 287, 295, 296; Dever v. Hagerty, 169 N. Y. 481, 62 N. E. 586.

The judgment should be reversed upon the law and facts, and a new trial ordered, with costs to the appellant to abide the event. All concur, except SPRING and ROBSON, JJ., who dissent.